# MIEL *v.* YOUNG.

PATENTS; INTERFERENCE; CLAIMS, CONSTRUCTION OF.

1. In an interference relating to means for supporting stone saws, between an applicant and a patentee, who filed his application and was granted a patent after the filing of the former's application, where neither party took testimony, and the question was whether the applicant had disclosed the invention of the issue, it was *held,* on a review of the specifications of both parties, that the claim of the applicant was sufficiently broad to cover the issue.

2. The reasonable presumption is that an inventor intends to protect his invention broadly; and the scope of a claim should not be restricted beyond the fair and ordinary meaning of the words, save for the purpose of saving it. (Following *Podlesak* v. *McInnerney,* 26 App. D. C. 399, and *Andrews* v. *Nilson,* 27 App. D. C. 451.)

No. 420. Patent Appeals. Submitted March 12, 1907. Decided May 7, 1907.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference proceeding.          *Affirmed.*

The facts are stated·in the opinion.

*Mr. Robert C. Mitchell* and *Mr. T. Walter Fowler* for the appellant.

*Messrs. Fred G. Dieterich & Co.* and *Mr. Albert E. Dieterich* for the appellee.

Mr. Justice McComas delivered the opinion of the Court:

In this case the Assistant Commissioner of Patents awarded priority of invention to James S. Young in this interference, the subject-matter of which is a stone saw, and the single issue is: "In a stone saw, the combination of a saw beam, a series of long bearing blades carried thereby, and removable means for reinforcing the lower ends of the blades during the initial part of a cutting operation."

On December 31, 1904, Young, the appellee, filed his application for a patent for a stone saw, and while it was pending, on April 24, 1905, the appellant, Charles L. Miel, filed his application for a patent for a stone saw, also, and on November 14, 1905, obtained a patent therefor. The Examiner of Interferences awarded priority of invention to Young, the senior party, on the record, no testimony having been taken by either party to the interference. Miel is the patentee, and the single count of the issue is in terms the first claim of his patent. On November 20, 1905, Young filed an amendment containing his interfering claim. The Examiners-in-Chief concluded that the invention of the issue is an issue which Young had not disclosed in his application, and that Miel is entitled to prevail on the question of priority, because of the failure of Young to produce evidence showing that he was in possession of the invention of the issue prior to the filing date of Miel; and therefore reversed the decision of the Examiner of Interferences in Young's favor.

Upon appeal the Assistant Commissioner of Patents reversed the decision of the Examiners-in-Chief, and found for Young; and Miel appealed to this court.

The invention here relates to means for supporting the blades of stone saws, which consist of numerous strips of steel projecting perpendicularly from a beam. These blades are several feet in length, and the ends of the blades, forcing an abrasive material against the stone, effect the sawing. Because of their length these blades tend to vibrate when sawing, until, having entered the stone, the sides of the kerf prevent them from vibrating laterally. To prevent vibration, Miel provided rigid blocks between the blades, the blocks being notched at the ends to receive the edges of the blades, the blocks being suspended from the beam by screw-threaded bars so adapted in position as to be shifted by means of nuts on the rods. When it becomes necessary to remove or raise the blocks, whose thickness is greater than the kerf formed by the saw, Miel's specification says he may taper the blades, and thus draw the blocks up to the narrower portion of the space between the blades, in order that they may press upon the edges of the blades and rigidly unite them.

Young unites the blades of his saw by thin strips of metal having hooked ends, which pass through apertures in the blades, the apertures being perpendicular to the faces of the blades except as to a slight inclined portion at one end. The hooks on the supporting members of the end blades are threaded and provided with a nut, by means of which all of the supporting members may be put under tension. The supporting strips are thin, and so arranged that they can enter the kerf. Young's specification states that the slots in the blade are slightly beveled to receive the upset or rivet-over portion of the inserted strip end. The drawing of Young's application shows that the strips are not riveted to the blades, in the sense in which "rivet" is ordinarily used. The ends of the strips are not upset to form a head, but the hooked end of the strip is sprung into the slot in the blade correspondingly shaped, so that, the Commissioner concludes, the resiliency of the metal would permit the springs to be forced into the slots and out again. Indeed, Young specific-

ally states that the strips can be moved from one position to another; wherefore the Commissioner concludes that he has a right to make the claim in issue. That Young's reinforcing device may not be removable as readily as Miel's, and that it is not designed to be removed after the initial stage of the cutting is completed, is unimportant. If the device be removable, as the claim specifies, it suffices, even though Young's device need not be removed during the entire sawing operation. We concur with the Commissioner that there is no limitation in the claim, which refers broadly to reinforcing means, which give weight to the claim that Miel's device was designed to prevent the blades from "chattering or wabbling" laterally, while Young's structure is for the purpose of enabling the blades of the saw "to stand the strain of their work," and to support the saw longitudinally.

This claim should be given the broadest interpretation which it will support, and we should not strive to import limitations from the specification to meet the exigencies of the particular situation in which the claim may stand at a given time. Although Miel is a patentee, if the terms of his claim do not, in their ordinary and natural meaning, define his invention according to his intent, he may apply for a reissue. "The reasonable presumption is that an inventor intends to protect his invention broadly; and consequently the courts have often said that the scope of a claim should not be restricted beyond the fair and ordinary meaning of the words, save for the purpose of saving it. The senior party who has a patent may not be heard to ask that his claim be rewritten so that he may prevail in an interference. He would be in somewhat better position had his patent not been issued, or had he surrendered it for reissue." *Andrews* v. *Nilson,* 27 App. D. C. 454. See *Podlesak* v. *McInnerney,* 26 App. D. C. 399.

We concur with the Commissioner that upon this issue we should not read into it limitations not within it, limitations found only in the specification of the appellee's patent. Young has fully disclosed the invention defined by the terms of the interference.

D. C.]                                    Syllabus.

The decision of the Commissioner of Patents must be affirmed, and the clerk of this court is directed to certify the proceedings in this court to the Commissioner of Patents according to law.

*Affirmed.*