# LINDMARK *v.* HODGKINSON.

---

PATENTS; INTERFERENCE; APPEALS; CLAIMS.

1. While, in awarding priority of invention in an interference proceeding, the right of one of the parties to make a claim may be considered as an ancillary question (following *Podlesak* v. *McInnerney,* 26 App. D. C. 405), where the three tribunals of the Patent Office have concurred in answering the question in the affirmative, this court will follow them unless a manifest error has been committed (following *United States ex rel. Newcomb Motor Co.* v. *Moore,* 30 App. D. C. 464),—especially in a case involving complicated construction, about which the experts of the Patent Office are less liable to err than this court.

2. If an applicant desires the claims interpreted or limited otherwise than expressed by the plain and usual meaning of the words employed, he should draw his claims to embody the meaning intended.

3. In an interference proceeding involving the invention of a device for governing the speed and power of compound steam turbines, in which one of the parties contended that his invention and that of the other

party were different, and that, therefore, the latter had no right to make claims of the issue, it was *held,* following the concurrent decisions of all of the Patent Office tribunals adverse to such contention, and after reviewing the claims of both parties, that, giving the counts of the issue the interpretation to which they were fairly entitled, they applied to the structures of both parties.

4. Where, in an interference proceeding, it appears that one of the parties conceived the invention prior to the date when the other party—a foreigner—introduced his invention into this country, and reduced to practice a year prior to such other party's filing date here, he is entitled to an award of priority.

No. 502.   Patent Appeals.   Submitted May 19, 1908.   Decided June 16, 1908.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference proceeding.          *Affirmed.*

The facts are stated in the opinion.

*Mr. George J. Harding* and *Mr. Frank S. Busser* for the appellant.

*Mr. Melville Church* and *Mr. Jonathan S. Green* for the appellee.

Mr. Justice ROBB delivered the opinion of the Court:

This is an appeal by Tore G. E. Lindmark from three concurrent and adverse decisions of the Patent Office tribunals in favor of Francis Hodgkinson, and involves an apparatus or device for governing the speed and power of compound steam turbines.   The issue is thus stated:

"1. In combination with an elastic fluid turbine wheel, a device for controlling the admission of live working fluid to the inlet of said wheel, a device 'for controlling the admission of live working fluid to the outlet of said wheel, and means controlled by said wheel for operating said devices to vary the steam pressure exerted by said fluid respectively on the opposite sides of said wheel.

"2. In combination with an elastic fluid turbine wheel, means for admitting live working fluid simultaneously to both sides of said wheel, and a device governed by the speed of said wheel for regulating the admission of said fluid to the exhaust side of said wheel.

"3. In combination with an elastic fluid turbine wheel and its closing casing, a valve for admitting live working fluid to the inlet side of said wheel, a valve for admitting live working fluid to the exhaust side of said wheel, and means controlled by said wheel for governing the said valves.

"4. In combination with an elastic fluid turbine wheel and its enclosing casing, a valve for admitting fluid to the inlet of said wheel, a valve for admitting fluid to said casing on the exhaust side of said wheel, and means controlled by said wheel for governing said valves, the said means being constructed and arranged to throttle the valve communicating with the exhaust side prior to throttling said inlet valve."

A patent was granted Lindmark, who is a foreigner, May 17, 1904, on an application filed June 27, 1902. On October 4, 1904, Hodgkinson filed an application for the reissue of his patent granted February 9, 1904, on an application filed May 24, 1902.

It is earnestly and ably contended by Lindmark's counsel that Hodgkinson it not an inventor of the subject-matter of the issue, and that, therefore, he has no right to make the claims of the issue. In *Podlesak* v. *McInnerney,* 26 App. D. C. 405, the rule previously adhered to in this court was modified, and we held that, in awarding priority of invention, the right of a party to make a claim might be considered as an ancillary question. It was there said, however, that where three tribunals of the Patent Office have concurred in answering the question in the affirmative, this court will follow them unless a manifest error has been committed. See also *United States ex rel. Newcomb Motor Co.* v. *Moore,* 30 App. D. C. 464. Especially is this true in a case like the present, which involves complicated construction, about which the experts of the Patent Office are less liable to err than ourselves.

In Lindmark's specification he states that his invention is not limited to any specific type of multiple steam turbines; consequently his apparatus must be held to be applicable to the turbine described by Hodgkinson. Lindmark further states that his invention "consists in the combination, with an elastic-fluid turbine wheel, of means for admitting live working fluid from a source of supply to both inlet and outlet of said wheel, also of means for regulating the flow of live working fluid so admitted, also means for effecting this regulation automatically." In Lindmark's patent there are three or more valves so adjusted as to admit steam in succession to successive turbine elements, and, as stated in his specification, if all the valves are open, "the motor fluid passes at full pressure to the several chambers; but as it enters on both sides of wheels I., II., III., there will be no flow through the bucket-openings of said wheels, and in them the fluid will do no work; but there will be a flow through opening to wheel IV., and this will be the first working wheel of the compound turbines." In a turbine of this type the outlet of one so-called wheel constitutes the inlet of the next.

Hodgkinson, in his original specification, states that his invention "relates to valves and valve-controlling mechanism for regulating or controlling a supply of fluid to a steam engine or other machine or apparatus; and it has for its object to provide a device of this character which shall be comparatively simple in construction and effective and certain in operation."

When this question was before Commissioner Allen on Lindmark's motion to dissolve, he said: "Both parties disclose turbines having a number of successive wheels, and in both the steam may be admittted to the first wheel, and will travel throught the successive wheels. In addition to the inlet to the first wheel, both parties disclose an inlet for supplying steam beyond the operative point of the first wheel. The steam from this second inlet operates the second wheel and passes through the succeeding wheels, but has no operative effect upon the first. Both parties disclose automatic means for regulating the supply to these inlets.    *    *    *    The limitation in these counts, which is supposed to mean different things in the two cases, is

that steam is admitted to the 'outlet' or 'exhaust side' of the wheel. In devices of this kind the inlet of the second wheel is the 'outlet' or 'exhaust' of the first, and therefore it would seem that the terms could have but one meaning. The claims of both parties say that the steam is supplied at the 'outlet,' and the Examiner has found that this statement is justified in both cases. * * * It is not clear why it is supposed that a different operation takes place, but it does seem clear that if it does take place, it is due to some difference in structure not set forth in the claims. It is not due to the mere fact that the steam is supplied to the outlet, for both parties do this. The steam being supplied at the same place, its back pressure will be the same, and necessarily the operation will be the same, unless there is some difference in the construction and arrangement of the wheel, or of its connections, which produces a different operation. These differences, however, if they exist, are not stated in the claim."

The question was again pressed when the case was before the Examiner of Interferences, who in deciding it said: "It is doubtless true that there are certain differences in the construction and operation of the devices of the two parties, but these differences are not set forth in the claims in issue. The first stage of the Hodgkinson device is a 'turbine wheel.' Hodgkinson shows valves for controlling the admission of steam to the inlet and the outlet of this wheel, and means controlled by the wheel for operating these valves. In the Hodgkinson device the primary valve is entirely opened before the secondary valve commences to open, which is not true in the Lindmark device; but none of the counts of the issue set forth the timing of the opening of the valves. The fourth count sets forth that the means for governing the valves is 'arranged to throttle the valve communicating with the exhaust side prior to throttling said inlet valve.' This is certainly true of the Hodgkinson device, for the primary valve does not commence to close till the secondary valve is fully closed. Furthermore, when the secondary valve is in any position except fully closed or fully opened the first stage

of the Hodgkinson turbine will be working on a differential of pressure."

Before the Examiners-in-Chief it was again contended that the Lindmark invention was different from Hodgkinson's, but the Examiners dismissed the contention in the following language: "We are unable to agree with the line of argument advanced on behalf of Lindmark, for the several counts of the issue are devoid of any limitation involving the specific timing of the primary and the secondary valves, to which counsel for Lindmark refers. The sole requirement of the first three counts is that the governor shall control the primary and secondary valves (counts 1 and 3), or control the secondary valve so as to regulate the admission of live working fluid to the exhaust side of the wheel (count 2). Count 4 is somewhat more specific than the other counts, for it states that the govenror is constructed and arranged to throttle the valve communicating with the exhaust side of the wheel prior to throttling the inlet valve. There is, even in this count, no language which may reasonably be interpreted as referring to a construction in which the primary and secondary valves are open in different degrees so as to admit 'just the proper amount of steam at the proper point.' As stated by the Examiner of Interferences, with whose conclusion we fully agree, none of the counts of the issue specifies the timing of the opening of the valve."

The question was again raised when the case was before Commissioner Moore on the merits. We quote the following from his opinion: "On this appeal, Lindmark also raises again the question of the right of Hodgkinson to make claims forming the issue. He contends that the claims should be construed in the light of his specification, and limited in view of the prior art, and that, when so constructed and limited, they do not read on Hodgkinson's disclosure. The answer to this contention is that if Lindmark desired the claims interpreted or limited otherwise than expressed by the plain and usual meaning of the words employed he should have drawn his claims to embody the meaning intended. * * * Lindmark contends that his invention is for a new system of turbine regulation, and that

Hodgkinson's device is merely for the purpose of automatically taking care of an overload. If this contention be true, the difference in function of the devices of the respective parties is accomplished by so proportioning the tension of the springs in the automatic valves that the secondary valve of Hodgkinson opens only under the effect of a greater load upon the turbine than that required to open said valves in Lindmark's turbine. But no limitations of this character are found in the counts of the issue. I agree with the conclusions of the lower tribunals, and for the reasons stated by them, that Hodgkinson has the right to make the claims forming the issue."

It will thus be seen that former Commissioner Allen, the Examiner of Interferences, the Examiners-in-Chief, and Commissioner Moore have all held that, so far as the record discloses, the functions of the two devices are the same. Lindmark's counsel in their very able and instructive brief contend that, because Lindmark introduces steam into both sides of successive units of the turbine at its inlet end, he effects a different result from Hodgkinson, whose by-pass or secondary valve communicates with the outlet of the first series of units. In the Parsons type of turbine there are several groups of these units, which progressively increase in diameter and constitute the high, intermediate, and low pressure divisions of the turbine. Lindmark arbitrarily designates each unit a "wheel," and takes issue with the Patent Office for permitting Hodgkinson to treat each of the different series of units as wheels. This being a comparatively new art, and it not appearing that the term "wheel" as applied to it has obtained a fixed and definite meaning, we see no reason why each series of units is not entitled to be called a wheel in construing the claims of the issue. The passage of steam from the inlet end of the first series of units to its outlet end is instantaneous; hence we are unable to understand wherein there is any difference in function in the two devices. As has been well stated by the tribunals of the Patent Office, if Lindmark desired a claim based upon the timing of the opening of the valves, he should have inserted it in his application. Giv-

ing the counts of the issue the interpretation to which they are fairly entitled, we think they apply to both structures.

All the tribunals of the Patent Office conceded to Lindmark his claims on the question of priority, but found that Hodgkinson conceived the invention prior to March 31, 1902, the date Lindmark's invention was introduced into this country, and reduced to practice a year prior to May 24, 1902, Lindmark's filing date, and that, therefore, Hodgkinson was entitled to the award of priority. We do not deem it necessary to analyze the testimony on this question, as, in our opinion, there is no doubt as to the correctness of the conclusions reached.

The decision of the Commissioner was right, and therefore is affirmed. The clerk of the court will certify this opinion and the proceedings in this court to the Commissioner of Patents, in accordance with law. *Affirmed.*