### COX v. HEADLEY et al.

(Court of Appeals of the District of Columbia. Submitted March 8, 1920. Decided May 3, 1920.)

No. 1292.

1. **Patents ⬌101—Interference claims must be construed with specification of originating application.**

In interference proceedings, the claims must be read in the light of the specification in the application in which they originated, and must be given the broadest interpretation that can reasonably be supported.

2. **Patents ⬌101—Elimination of originator of interference claims does not affect construction.**

The elimination from interference proceedings of the originator of the application, who originated the claims, does not affect the rule that the claims must be construed in the light of those specifications; so that it was error to limit interfering claims after the elimination of originator in a manner which excluded his specifications.

3. **Patents ⬌90(5)—Apparatus of senior applicant held not operative.**

In interference proceedings, on a claim for bottle-making machine, apparatus of senior applicant *held* not operative with machine described by the claim, so that junior applicant is entitled to priority.

Smyth, Chief Justice, dissenting in part.

Appeal from Assistant Commissioner of Patents.

Two interference proceedings between Charles F. Cox and Benjamin T. Headley and another, and between Charles F. Cox, Benjamin T. Headley and another, and Francis W. Pawling. From a decision awarding priority to Headley, Charles F. Cox appeals. Affirmed as to the first proceeding, reversed as to the second, and priority therein awarded Cox.

Fritz V. Briesen, of New York City, for appellant.

C. P. Byrnes, G. H. Parmelee, Geo. E. Stebbins, and E. L. Parmelee, all of Pittsburgh, Pa., for appellees.

ROBB, Associate Justice. Appeal from Patent Office decisions in two interference proceedings, Nos. 40,043 and 40,044, in which priority was awarded the junior parties, Headley and Thompson.

The parties to interference No. 40,043 are the appellant, Cox, and the appellees, Headley and Thompson. The invention involved in this interference is an automatic machine for making glass bottles, and is expressed in 10 counts, taken from the Headley and Thompson application, of which we reproduce the first:

"1. In a glass bottling machine, the combination of mold carrying means rotatably mounted, a pair of molds carried by said means opposite each other in radial alignment, a rotatable face plate journaled on a horizontal axis on said mold carrying means and carrying one mold of each set, means for rotating said face plate to place the molds carried thereby in a vertical charging position and then to place said molds in a position to permit removal from the blanks inclosed thereby and their engagement by the other molds carried by said mold-carrying means, and means for moving said mold-carrying means."

Interference No. 40,044 originally involved the applications of Headley and Thompson, Francis W. Pawling, and the appellee, Cox. The two counts of this interference were copied from the Pawling application, and, as there used, describe a manually rotated device for inverting the mold and swinging open the blank mold members in a bottle-making machine. We here reproduce the two counts of this interference:

"1. In a glass-bottling machine, the combination of a cylindrical carrier rotatable about its own axis, and otherwise movable only in a horizontal plane, and having a fluid pressure chamber, a mold including two mating members, at least one of which is movable relative to the other, a piston mounted in said fluid pressure chamber, connections between said piston and the movable mold member or members, and means for turning said cylindrical carrier upon its axis to invert the mold.

"2. In a glass-working machine, the combination of a pedestal, a mold carrier journaled thereon and axially fixed with reference thereto, a mold including two swinging mating members pivotally mounted upon the mold carrier upon an axis lying at an angle to the axis of the mold carrier, an actuating member reciprocally mounted within the journal portion of the mold carrier, connections between said actuating member and the movable mold members."

Cox is the senior party in both interferences, and the record clearly discloses that he was the first to conceive the invention of the issues. Evidently realizing the handicap under which they were placed, Headley and Thompson, when the case was reached before the Examiner of Interferences, filed a motion for leave to amend their preliminary statement, but, failing to state a sufficient reason therefor, the motion was denied. Down to this time Headley and Thompson had filed no motion, under rule 130 of the Patent Office, attacking the right of Cox to make the claims. However, after the adverse decision of the Examiner of Interferences on their application to amend their preliminary statement, they notified Cox that at final hearing they would urge that the machine upon which he based his right to make the claims was inoperative, and hence that the claims were not patentable

to him. Thereafter the Examiner of Interferences awarded priority to Cox in both interferences. Since Pawling took no testimony, he was confined to his filing date for conception and reduction to practice, and did not appeal from the decision of the Examiner of Interferences.

On appeal to the Examiners in Chief, the right of Headley and Thompson to challenge the operativeness of the Cox device was sustained, notwithstanding their failure to file a motion under rule 130. The Board then ruled that the machine upon which Cox depended for actual reduction to practice "as an entirety" was not "satisfactory," but pointed out that, "when the case was originally filed, the Examiner required a division between claims which involved the shears, for cutting off the glass above the molds, and the rotary plunger or compacting device, which is one of the features alleged to be inoperative, and the group of claims which are involved in the interference, which all relate to the mold carrying and operating elements," and that the Examiner had found "no necessary connection between these devices." The Board ruled that, as "the issues cover only a subordinate part of the machine which would be capable of use in other bottle-blowing machines, and there is no reason to suppose that this part was inoperative, Cox can at least rely upon his constructive reduction to practice on the date of filing of his application, June 4, 1912, and was therefore the first to conceive and first to reduce to practice, which entitles him to an award of priority."

Thereupon, Pawling having dropped out of the case, a petition for rehearing was filed, and the Board set aside their decision and adopted the contention of Headley and Thompson that "the subject-matter of the issues is a construction in which the molds are reversed, opened, and closed, and moved from one station to another *automatically.*" The Board did not attach any weight to the fact that some of the claims had originated in the Pawling application, which admittedly did not disclose an automatic structure, because Pawling had been eliminated from the interference. The Board further found that Cox had not shown that his combination was susceptible of being substituted in machines of the prior art. Thereupon, on appeal by Cox, the Assistant Commissioner sustained the ruling of the Board and awarded priority to Headley and Thompson. The Assistant Commissioner said:

"Pawling is not now involved in the interference, since he took no testimony and his application was filed after the date established by Headley and Thompson. If his application were still in the interference, the question of the operativeness of that device might have to be considered; but it does not follow, even if the Pawling machine is operative for the purpose for which it is intended, that necessarily the operativeness of the entire machine of Cox cannot be considered, or that the counts must be construed as limited to the means for opening and closing the molds, irrespective of whether this means is operative in the machine shown."

[1] We first will consider the three-party interference, that is, No. 40,044. The claims of this interference, having originated in the Pawl-

ing application, must be read in the light of the Pawling specification. Over and over again has it been determined that such is the rule, and that claims must be given the broadest interpretation they reasonably will support. Podlesak v. McInnerney, 26 App. D. C. 399; Sobey v. Holsclaw, 28 App. D. C. 65; Miel v. Young, 29 App. D. C. 481; Kirby v. Clements, 44 App. D. C. 12; Seymour v. Molyneux (present term) 271 O. G. 688. In the case last cited we said:

> "While we many times have ruled that a party will not be permitted to narrow his claims to suit the exigencies of a given situation, it is equally well settled that the meaning given to the counts of an interference must be that disclosed in the specification of the party first to make the claim."

In the Pawling specification, as the Patent Office tribunals recognized, automatic operations are not contemplated. The application assumes that the blowing operation is to be performed in accordance with the teachings of the prior art. Count No. 1 provides, and was intended to provide, mechanical means for inverting the mold and for swinging open the blank mold members. The neck mold is not even an element of this count, nor are the plunger and specific form of suction mechanism of the Pawling structure made elements of the count. Count No. 2 differs from count No. 1, in that the pedestal is included as an element, both mold members are specified as "swinging," and the piston is referred to as "an actuating member." Clearly these counts, as used by Pawling, embrace and were intended to embrace nothing more than a distinct subdivision of a glass-blowing machine, which Pawling in his specification states "may, of course, be incorporated in various ways in glass-blowing machines involving other features." These claims were suggested to and copied by Cox and Headley and Thompson, and, in our view, they should be read now, as then, in the light of the Pawling disclosure.

[2] The elimination of Pawling cannot result in the elimination or abridgment of this rule of interpretation. The reason for the rule still exists, namely, that the originator of the claims is presumed to have couched them in language setting forth his particular invention. If another claims the invention, it is only fair that the application originating the claims should be looked to in determining their scope and meaning. In the present case, merely because Pawling was defeated before the Examiner of Interferences, the Patent Office has read into the claims of that interference a limitation utterly inconsistent with the disclosure of that application. In so doing the Patent Office erred. Reading these claims in the light of the Pawling application, Cox is entitled to priority, because he discloses everything there disclosed.

[3] We come now to the decision in interference No. 40,043, wherein the narrower claims originated with Headley and Thompson. It follows, from what we have said, that these claims must be read in the light of the disclosure by Headley and Thompson, and we are not prepared to disturb the ruling of the Patent Office that, when so read, they are not patentable to Cox.

The decision in interference No. 40,043 is affirmed, and the decision in interference No. 40,044 is reversed, and priority as to that interference awarded Cox.

Affirmed as to interference No. 40,043.

Reversed as to interference No. 40,044.

SMYTH, Chief Justice, dissents as to interference No. 40,044.