## NICHOLS v. MINNESOTA MINING & MANUFACTURING CO.

No. 4554.

Circuit Court of Appeals, Fourth Circuit.

Jan. 9, 1940.

Before PARKER and SOPER, Circuit Judges, and DOBIE, District Judge.

Ralph Burch, of Washington, D. C. (Horace C. Chandlee, of Washington, D. C., and Omer T. Kaylor, of Hagerstown, Md., on the brief), for appellant.

Jacob T. Basseches, of New York City, and William H. Abbott, of Chicago, Ill. (Raymond S. Williams, of Baltimore, Md., and Paul Carpenter, of Washington, D. C., on the brief), for appellee.

PARKER, Circuit Judge.

This is an appeal in a case instituted under R.S. § 4915, 35 U.S.C.A. § 63, by the Minnesota Mining and Manufacturing Company, assignee of one Swenson, to establish priority of right with respect to the invention embodied in patent No. 1,954,778, issued to Ernest H. Nichols, and to have patent issued to plaintiff embodying eight of the claims of that patent. In interference proceedings instituted in the Patent Office, priority was accorded Nichols, and patent was issued to him on application filed Nov. 1, 1932. Plaintiff relies upon the production by Swenson, several months prior to this application, of the product covered by the patent and manufactured in accordance with its process claims.

The Patent Office record was before the judge below and was considered by him in connection with further testimony of Swenson, additional expert testimony and evidence of experiments conducted under the court's direction. He properly applied the rule of Morgan v. Daniels, 153 U.S. 120, 14 S.Ct. 772, 38 L. Ed. 657, to the effect that the testimony must carry thorough conviction before the court would be justified in setting aside the decision of the Patent Office, but found that the additional evidence brought out the issues much more clearly than had theretofore been done, and held that in the light thereof Swenson was clearly shown to have priority. Minnesota Mining & Manufacturing Co. v. Nichols, D. C., 28 F. Supp. 105. We review such findings of the District Judge, just as in other cases,

under the rule that they must be accepted by us unless clearly erroneous. Rule 52(a) of the Rules of Civil Procedure, 28 U.S.C. A. following section 723c; United States v. United States Shoe Machinery Co., 247 U. S. 32, 41, 38 S.Ct. 473, 62 L.Ed. 968; Adamson v. Gilliland, 242 U.S. 350, 37 S.Ct. 169, 61 L.Ed. 356; Wolf Mineral Process Corp. v. Minerals Separation N. A. Corp., 4 Cir., 18 F.2d 483, 486.

The invention in issue relates to glazed granules for use in the manufacture of composition roofing and the process of making these granules. The granules are obtained by crushing silica, quartz and selecting those which will pass a relatively coarse screen and will be retained by a finer screen. Finer particles of the quartz are mixed with a flux and coloring matter, and water is added to form a paste by which the granules are coated. The coated granules are then fed into a rotary furnace, where they are subjected to such a temperature and for such a time as will cause the finer particles of silica or quartz in the paste to fuse completely and the larger particles to fuse only in part. There is thus formed on the granules a glazed coating in which the larger or partly fused quartz particles are embedded, giving a rough surface to the granules and causing them to adhere more securely to the asphalt base into which they are impressed. The eight claims of the patent to which the controversy as to priority relates are as follows:

"1. Roofing granules, each granule of which has a surface coating composed of partly fused granule particles and completely fused granule particles.

"2. Granular material, each particle of which is provided with a coating including relatively much smaller particles of the same material, a portion of said smaller particles being completely fused and a portion of said smaller particles being partly fused.

"3. Granular material, each particle of which consists of a central unitary and homogenous nucleus of quartzitic material and a coating of particles of fusible material of relatively small size fused together and to the surface of the nucleus, the nucleus and coating particles being of the same material.

"4. A roofing material comprising a base the surface of which is mineralized with glazed granules as set forth in claim 3.

"5. A roofing material comprising a base the surface of which is mineralized with glazed granules as set forth in claim 1.

"6. A roofing material comprising a base the surface of which is mineralized with glazed granules as set forth in claim 2.

"7. A method of making granular material which consists of producing granules from vitreous material, applying thereto a coating including a flux and relatively much smaller particles of the same material in differing sizes, and then firing the coated granules at such a temperature and for such a time as to fuse the surfaces only of the granules, as to completely fuse the smaller of the coating particles, and as to partly fuse the larger of the coating particles.

"8. A method of making granular material which consists of producing granules from vitreous material, applying thereto a liquid coating including a flux and relatively much smaller particles of the same vitreous material in differing sizes, drying the coating, and then firing the coated granules at such a temperature and for such a time as to fuse the surfaces only of the granules, as to completely fuse the smaller particles of the coating, and as to partly fuse the larger particles of the coating."

As heretofore stated, Nichols' application was filed November 1, 1932, and no effort was made to show invention by him prior to that date. Swenson was a chemist employed by plaintiff, and as early as 1931 he was engaged in experiments for producing glazed granules for use in the manufacture of roofing. The record contains evidence of a number of experiments which he conducted resulting in the production of glazed granules; but we need not go into these, as it is admitted that in the Summer of 1932 plaintiff manufactured glazed granules under the formula developed by Swenson as a result of his experiments, and sold and delivered them to Bird & Son of Chicago, and we think that these granules themselves and the process of their manufacture conform substantially to the claims of the patent as above set forth. It is shown beyond question, we think, that the nucleus granules of the Bird & Son shipment were of silica quartz; that they were covered with a coating including a flux and relatively much smaller particles of the silica quartz; that they were fired at

such a temperature and for such a time as to fuse completely the smaller of the coating particles and to fuse partly the larger particles; and that the result was a quartz granule with a glazed coating in which small particles of quartz were embedded. Not only does this appear from tests made with respect to granules taken from the Bird & Son shipment, but it also appears from an examination of granules made during the hearing below in accordance with the Swenson formula.

With respect to the granules made during the hearing below, it is objected that the formula was supplemented by the oral testimony of Swenson and that this was not corroborated. It appears, however, that this oral testimony related merely to the source of the silica or quartz fines used in the coating and as to the time of firing; and, when the nature of the process is considered, we think that the oral testimony was sufficiently corroborated. Swenson testified that the silica fines contained in the coating were obtained from a Sly dust collector used in connection with the crushing operations. The formula calls for silica fines in the coating; and microscopic examination of the Bird & Son granules discloses silica fines embedded in the glaze. Whether they were of the size that the Sly dust collector would gather or not, would seem to be immaterial since they were undoubtedly of a size much smaller than the nucleus. As to the time of firing, the fact that the Bird & Son granules had a glaze shows that the firing was for such a time and at such a temperature as to fuse at least the smaller particles in the coating; the fact that particles of quartz or silica were embedded in the glaze shows that the firing was such as not to fuse completely these particles; and the fact that the flux used attacks the silica when sufficient heat is applied and that fusing had commenced shows that these particles must have been partly fused.

■■ It is argued that one of the purposes of the invention was the production of a granule with a rough surface and that granules manufactured in accordance with the Nichols specification have a rough mat surface, rather than the glazed surface of the Swenson product. The answer to this is that the claims and not the specification measure the patent; and the claims here in controversy clearly cover the Swenson method and product and are not limited to a granule with a rough surface. The fact is that claims providing for the making of rough granules were abandoned in the Patent Office. It may be that the granule of Nichols is an improvement over that of Swenson, but to permit Nichols to have the benefit of claims so broadly drawn would be to award him the invention of Swenson. If he wished a patent on the rougher granules, he should have narrowed his claims so as not to cover Swenson's invention. As said by the Court of Appeals of the District of Columbia in Re Levy, 55 App.D.C. 137, 2 F.2d 939, 940: "Over and over again, we have ruled that claims must be given the broadest interpretation which they reasonably will support, and that a party will not be permitted to narrow his claims to suit the exigencies of a particular situation. Miel v. Young, 29 App.D.C. 481; Lindmark v. Hodgkinson, 31 App.D.C. 612; Cox v. Headley, 49 App.D.C. 341, 265 F. 981. The party who states his claims before the Patent Office in broad language is not in a position, when thrown into interference, to read limitations into them. The reason is obvious. If he has asked too much, he may reform his claims in an appropriate proceeding. When he takes claims broader than his invention, however, he thereby is enabled unduly to harass the public."

■ It is argued also that the effort of Swenson was to produce a glazed granule and that the presence of partly fused particles adhering to the surface was accidental and was not set forth in the patent application filed by him. As we have seen, however, the surfacing of the granules which he produced resulted from the process which he followed and in the course of this process it was inevitable that some of the quartz particles contained in the coating should be completely fused and others only partly fused, and that the partly fused particles should inhere in the glazed coating. Since, therefore, Swenson produced granules covered by the product claims of the patent by a process covered by its process claims, it is immaterial that he did not fully appreciate or describe the physical changes caused by the process which resulted in the product. "It is method and device which may be patented and not the scientific explanation of their operation". De Forest Radio Co. v. General Electric Co., 283 U.S. 664, 684, 685, 51 S.Ct. 563, 569, 75 L.Ed. 1339. A similar question arose in United States Industrial Chemical Co. v. Theroz Co., 4 Cir., 25 F.2d 387, 390,

where we said: "Defendants make much in their brief of Schaub's ignorance with respect to the fact that it is the acetone contained in commercial methyl alcohol which is the solvent of nitrocellulose and that it is the water contained in commercial ethyl alcohol which is the coagulant. But we are not impressed with this argument. Schaub was experimenting with alcohol of the commercial grades; and if, through such experiments, he discovered a way to attain the result which he was seeking, and correctly described it in his application for a patent, it makes no difference whether or not he understood the chemical theory or the natural laws underlying the process."

The principle applicable is thus stated by the Supreme Court in Diamond Rubber Co. v. Consol. Tire Co., 220 U.S. 428, 435, 31 S.Ct. 444, 447, 55 L.Ed. 527: "A patentee may be baldly empirical, seeing nothing beyond his experiments and the result; yet if he has added a new and valuable article to the world's utilities, he is entitled to the rank and protection of an inventor. And how can it take from his merit that he may not know all of the forces which he has brought into operation? It is certainly not necessary that he understand or be able to state the scientific principles underlying his invention, and it is immaterial whether he can stand a successful examination as to the speculative ideas involved. * * * He must, indeed, make such disclosure and description of his invention that it may be put into practice. In this he must be clear. He must not put forth a puzzle for invention or experiment to solve, but the description is sufficient if those skilled in the art can understand it. This satisfies the law, which only requires as a condition of its protection that the world be given something new and that the world be taught how to use it. It is no concern of the world whether the principle upon which the new construction acts be obvious or obscure, so that it inheres in the new construction."

See also Smith v. Hall, 301 U.S. 216, 226, 57 S.Ct. 711, 81 L.Ed. 1049; Vulcan Corp. v. United Shoe Machinery Corp., 6 Cir., 82 F.2d 195, 196.

■ Nor is it important that, in his efforts to produce a glazed surface, he produced not only such a surface, but also a surface with irregularities due to the presence of the partly fused particles in the glaze, which made them adhere more securely to asphalt. That his product had values which he did not anticipate or strive for, cannot deprive him of his right to a patent as its inventor. Radio Corp. of America v. Radio Engineering Laboratories, 293 U.S. 1, 14, 55 S.Ct. 928, 79 L.Ed. 163.

The record shows, however, that Swenson had a conscious recognition of the function and purpose of all the materials he employed and the processes applied to them. He added the quartz or silica fines with his flux to produce the glaze coating of the granules. The result was a product, responding to the product claims of the patent, made by a process responding to its process claims.

■ Two contentions of defendant should be briefly noticed. One is that plaintiff is estopped to claim invention by reason of the institution of prior use proceedings in the Patent Office. Defendant indeed admits that it cannot rely upon the prior use proceedings as an estoppel in the strict sense, but contends that they should be considered in weighing the testimony offered by plaintiff to establish priority of invention. When this is done, however, we are satisfied that the court below was thoroughly justified in awarding priority to plaintiff.

■ The remaining contention is that the trial court should have excluded all testimony offered upon the hearing other than the record made in the Patent Office. With this we cannot agree. The statute under which the suit was instituted, R.S. § 4915, 35 U.S.C.A. 63, expressly provides that the record of the Patent Office shall be admitted "without prejudice * * * to the right of the parties to take further testimony." It has been held that a party may estop himself from offering testimony in a suit instituted under R.S. § 4915 by intentionally withholding it in the proceedings in the Patent Office. Barrett Co. v. Koppers Co., 3 Cir., 22 F.2d 395. There is no basis here, however, for the application of such rule. On the contrary, the evidence offered in the court below, in so far as it was not a mere repetition of testimony in the interference proceedings, consisted of expert testimony and experiments designed to strengthen the contentions already fully made and supported by testimony before the Patent Office. A suit under R.S. § 4915 is not in the nature of an appeal but of a trial de novo; and the court has all the customary power of an eq-

uity court to hear the evidence fully and make its own findings. Globe-Union, Inc., v. Chicago Telephone Supply Co., 7 Cir., 103 F.2d 722; General Talking Pictures Corp. v. American Tri-Ergon Corp., 3 Cir., 96 F.2d 800, 811; Powell v. McNamara, 2 Cir., 74 F.2d 750; Kaplan v. Robertson, D. C., 50 F.2d 617.

There was no error and the decree appealed from will be affirmed.

Affirmed.