34 C.C.P.A.(Patents)

## BROOKER v. RIESTER et al.

Patent Appeals No. 5297.
Court of Customs and Patent Appeals.
May 20, 1947.

Newton M. Perrins and Daniel I. Mayne, both of Rochester, N. Y., for appellant.

Richard K. Stevens, of Washington, D. C. (E. P. Gilheany, of New York City, and E. H. Mosher, of Washington, D. C., of counsel), for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

JACKSON, Associate Judge.

This appeal is in an interference proceeding from a decision of the Board of Interference Examiners of the United States Patent Office awarding priority of the subject matter of invention of 5 counts to the joint appellees.

The counts read as follows:

Count 1: A dyestuff having the following general formula:

wherein A and

B stands for an atom grouping capable of completing an organic ring system,

Y stands for the member of the group consisting of O, S, Se, and $-CH=CH-$,

$R_1$ is alkyl,

$R_2$ is a member selected from the class consisting of alkyl and aryl,

X is an anion and

n is a whole number smaller than 3.

Count 2: A process for the production of dyes comprising treating with an alkyl salt a compound of the following general formula:

$$A \diagup^{Y} \diagdown_{N}^{C} = (CH-CH)n = C \quad \begin{matrix} R_2 \\ N \\ \\ O=C \end{matrix} \diagdown^{N} C = S$$

wherein A and

B stand for an atom grouping capable of completing an organic ring system,

Y stands for a member of the group consisting of O, S, Se, and $-CH=CH-$,

$R_1$ is an alkyl,

$R_2$ is a member selected from the class consisting of alkyl and aryl, and

n is a whole number smaller than 3,

and condensing the intermediate so formed, in the presence of an acid binding agent, with a compound selected from the class of heterocyclic nitrogen compounds which have a nucleus of the type contained in cynanine dyes and which contain a reactive methyl group in the c (position to the ring nitrogen atom.

Count 3: A dye intermediate of the following general formula:

$$\left[ A \diagup^{Y} \diagdown_{N}^{C} = (CH-CH)n = C' \begin{matrix} R_2 \\ N \\ \\ O=C \end{matrix} \diagdown^{N} C -SR_3 \right]^{+} X-$$

wherein A and

B stand for an atom grouping capable of completing an organic ring system,

Y stands for the member of the group consisting of O, S, Se, and –CH=CH–,

$R_1$ is alkyl,

$R_2$ is a member selected from the class consisting of alkyl and aryl.

$R_3$ is alkyl,

X is an anion, and

n is a whole number smaller than 3.

Count 4: A process for the production of dyes comprising treating with an alkyl salt a compound of the following general formula:

wherein A and

B stand for an atom grouping capable of completing an organic ring system,

Y stands for a member of the group consisting of O, S, Se, and –CH=CH–,

$R_1$ is alkyl,

$R_2$ is a member selected from the class consisting of alkyl and aryl, and

n is a whole number smaller than 3.

Count 5: A photographic silver halide emulsion sensitized with a dyestuff having the following general formula:

wherein A and

B stand for an atom grouping capable of completing an organic ring system,

Y stands for the member of the group consisting of O, S, Se, and –CH=CH–,

$R_1$ is alkyl,

$R_2$ is a member selected from the class consisting of alkyl, aryl and

X is an anion and

n is a whole number smaller than 3.

The interference involves an application of appellees, Serial No. 304,173, for "Methine Dyestuffs," filed November 13, 1939, and an application of appellant, Serial No. 316,002, for "Polymethine Dyes" filed January 27, 1940.

■ Appellant being the junior party has the burden of proving priority of invention by a preponderance of the evidence.

The subject matter of the counts pertains to a dye intermediate, a process of preparing such dye, a dye and a process for preparing the dye and a photographic emulsion sensitized with the dye.

Appellant in his preliminary statement alleged disclosure to others of the products and processes defined in the counts, written description and reduction to practice of counts 3 and 4 on June 28, 1937; written description of the subject matter and reduction to practice as defined by counts 1 and 2 on November 3, 1937; written description and reduction to practice as defined by count 5 on November 29, 1937, and active exercise of reasonable diligence in adapting and perfecting the processes and products defined in all of the counts on June 28, 1937.

■ Appellant took testimony and introduced into evidence many exhibits. Appellees filed no preliminary statement and took no testimony and are, therefore, confined for conception and constructive reduction to practice to their filing date—November 13, 1939.

Count 1 defines a dye which is made from the dye intermediate defined by count 3. Count 4 is directed to a process for preparing the dye intermediate of count 3. Count

2 is directed to a process for preparing the dye of count 1 and count 5 is directed to the combination of photographic silver halide emulsion and the dye defined by count 1.

Each of appellant's exhibits 1 to 4, inclusive, consists of a page taken from note books of a research chemist working under the direction of appellant and all relate to laboratory work.

It was agreed by counsel for the parties that the structural formula at the top of exhibits 1 and 2, respectively, are within the definition set out in count 3; that the merocyanine of example 36 of British patent 450,958 is within the structural formula included in counts 2 and 4 as starting material; that the formulation structurally depicted at the top of exhibit 3 and that appearing at the top of exhibit 4 are within the dyestuff definition of count 1 and also that of count 5. Counsel for appellees, however, do not by reason of such agreement, admit that the work and procedure described in exhibits 1 to 4, inclusive, produce products the formulae for which there appear.

It is an effect conceded that the work done on behalf of appellant was performed in 1937 or very early in 1938, but it is denied that there is any evidence in the record to establish diligence on behalf of appellant during the critical period from a date just prior to the filing date of the senior party and continuing up to and including appellant's filing date. Therefore, the vital issue here is whether or not the work in 1937-38 by or on behalf of appellant is sufficient to establish reduction to practice at a date preceding that of the filing date of the appellees and whether or not, if appellant had an earlier conception, he has shown diligence.

The Board of Interference Examiners, after having analyzed the testimony together with the exhibits, held that appellant had neither proved the production by him of compounds reading on the counts 1, 3 and 5, nor carried out the processes defined by counts 2 and 4 and, therefore, has not shown an actual reduction to practice prior to the filing date of appellees. The board also held that appellant had failed to establish diligence during the critical period and, therefore, could not prevail by reason of an earlier conception coupled with diligence.

With respect to exhibit 1 it appears that a stable melting point of the product resulting from the process therein shown was 138° to 140° C., but the product was of limited stability and decomposed at that temperature. Appellant testified: "This intermediate had limited stability. It would break down either on preparation or during the reaction to which it was submitted giving rise to the insoluble merocyanine which we started with in the first place." It is conceded that the compound was not analyzed. Appellant's comment upon the instability of the compound of exhibit 1 applied, he stated, also to the product of exhibit 2. That exhibit is alleged to show a preparation of the same product as appears in exhibit 1 made by a somewhat different process. The melting point of the product of exhibit 2 after recrystallization was 160° to 163°C. with decomposition and it clearly appears by the testimony of both appellant and his research chemist that upon analysis the product was considered to be unsatisfactory. A one gram sample of that material was thereafter converted to the perchlorate by being dissolved in methyl alcohol and treated with a solution of excess sodium perchlorate in methyl alcohol resulting in a crystallized-out product which was analyzed only for its carbon and hydrogen contents.

It was testified that the dye of exhibit 3 was made from the admittedly unsatisfactory first intermediate of exhibit 2 and that due to impure condition of the intermediate a small yield of the product resulted.

Exhibit 4 disclosed a procedure similar in character to the preparation of the first intermediate of exhibit 2 except that in exhibit 4 the intermediate used was that produced as shown in exhibit 1 which substance, it will be remembered, was not analyzed. A much larger yield of dye was said to have been then produced and it was analyzed for carbon and hydrogen content only, as aforesaid. It was said that the calculated value of the carbon, which was made with an allowance for the presence of two molecules of methyl alcohol for each molecule of the carbon, tallied closely with the found value of the carbon and that the

said quantity of methyl alcohol was assumed to be present in the amount of two molecules because such quantity resulted in a carbon calculated value closer to the actually found value than one, three or more methyl alcohol molecules. It was admitted that the fixing by assumption of two molecules of methyl alcohol was made in order that the calculations would harmonize with the quantity of carbon found on analysis.

The assumed presence of the methyl alcohol which appears to be known also as alcohol of crystallization was discussed in the board's decision as follows:

"It may be noted also that no background for the concept of this alcohol of crystallization can be found except the type of inference indicated above and in the entire Brooker application which contains over forty examples of the preparation of these dyes and intermediates, no reference to alcohol of crystallization can be found. *There is accordingly no adequate evidence in the record that such a compound exists* and the situation is not such as to warrant taking judicial notice of its existence.

"If we do not accept the premise of the presence of this alleged alcohol of crystallization in the present case then it follows that the found values for carbon and hydrogen and the calculated values, based on the theoretical formulas given, do not agree.

"Under such circumstances it is not believed that the preparation of the dye having reference to counts 1 and 5, shown in exhibit 4 has been reasonably established.

"A further point that emphasizes this conclusion is the fact that *although the dye contains at least six elements, tests for carbon and hydrogen alone were made.* On this point, Sprague testified:

" 'XQ23. You could not tell the presence of these other elements, however, from the carbon and hydrogen analysis alone, could you? A. No.' " (Emphasis added.)

The board concluded, and we think properly so, that appellant had not established that he successfully made the dyes as represented by the formulae of counts 1 and 5.

It will be noted that the melting points of the intermediate products of exhibits 1 and 2 show a difference of from 20 to 25 degrees. Since the product of exhibit 1 has not been analyzed, its identity, if it can be determined at all on this record, must result from its melting point. Since the compounds, products of the process of exhibit 1 and that of exhibit 2, are said to be the same, we think it should be expected that the melting points should be about the same. Appellant admitted that it is well known to organic chemists that as a rule individual chemical compounds have definite melting points and that purer substances melt at higher temperatures than impure substances. If, as was admitted by appellant and his chief witness, the product of exhibit 2 was not as pure as that of exhibit 1, such admission would seem to be contradictory of the aforesaid rule.

The conceded impurity of the product of exhibit 2 surely cannot establish the identity and purity of the product of exhibit 1 for the reason that no analysis of the latter had been made. Assuming the theory that the purer product has the higher melting point and the impure product a lower melting point, in view of the contradictory testimony we cannot see how the identity and purity of the product of exhibit 1 has been established. Therefore, we are of opinion that appellant has not sufficiently proved that the dye intermediate resulting from the process of exhibit 1 is in fact the compound called for by the limitations of count 3.

Spectrographic tests were made of the compound of exhibit 1 and the dye of exhibit 4, but since it is admitted that the chemical make-up of the dye cannot be inferred from a spectrogram, we are of opinion, as was the board, that such tests are of little, if any, aid in establishing the identity of the compounds.

Since the perchlorate product heretofore mentioned was made from the first preparation of exhibit 2, which is admittedly impure, we cannot see how its identity has been made clear.

From what has been heretofore stated with respect to the methods employed by appellant we do not think that he carried out the processes defined in counts 2 and 4 and, therefore, he has not sufficiently shown an actual reduction to practice at a time earlier than appellees' filing date.

The record does not show that appellant was diligent during the critical period and, therefore, as was held below, he may not prevail even on the basis of an earlier conception, if any.

Appellant in his brief argues vigorously that the Board of Interference Examiners applied a "double standard" of invention as between the parties. That is not true. The board recognized the distinction between constructive and actual reductions to practice. Appellant had the burden of proving an actual reduction to practice and in so doing was obliged to prove every step thereof. Appellees were entitled to rest upon their filing date for a constructive reduction to practice. Such reduction to practice is as valid as though it were an actual reduction to practice so far as appellees are concerned.

Appellant has placed much reliance upon the case of Farrington et al. v. Mikeska, 155 F.2d 412, 33 C.C.P.A., Patents, 1073. That case involved priority of invention with respect to two counts relating to mixed ester salts of phosphoric acid to which the alkylaryl groups made up the ester portion of the molecule. The Board of Interference Examiners awarded priority of the subject matter defined by count 1 to the party Farrington et al. and that of count 2 to the party Mikeska. Cross appeals were taken here and we affirmed the decision of the board.

Chemical experiments entered largely into the record of that case and in affirming the decision of the board awarding Mikeska priority as to count 2 the following was stated by us and is quoted in the brief of appellant: "That the desired product was obtained by Serniuk, was indicated by an analysis which showed the phosphorus content to be very close to what is termed the 'theoretical value,' that is, the amount which would theoretically be present if the product had the desired composition, and also by the 'solubility characteristics of the product.' Farrington et al. contend that the analysis is insufficient because the amount of each element was not determined. The Board of Interference Examiners held, however, that the tests employed were sufficient to establish the identity of the product as falling within the scope of both counts.

That holding, under all the circumstances *and in view of the method by which the product was prepared,* is, in our oipinion, correct." (Emphasis added.)

That quotation appellant contends supports his position here. Standing by itself such contention would seem to be of merit. However, we are of opinion that other portions of the opinion, which are cited in appellees' brief are of more importance as applied to the facts of the instant case and make it apparent that the board's decision was correct. We further stated in our decision in that case as follows: "The results of the Toonder experiments differed from those of the Serniuk experiment in that the phosphorus content of the products varied *to a considerable extent* from the 'theoretical value' of compounds coming within the counts. Although Mikeska argues that this discrepancy was due to impurities, *that argument is merely speculative. The evidence submitted does not satisfactorily establish that any product obtained by the witness Toonder was of the kind called for by either of the counts,* and it follows that his work is not sufficient to establish either conception or reduction to practice of the subject matter defined by either of the counts in issue." (Emphasis added.)

In connection with the testimony of the party Farrington et al. we commented upon it with respect to count 2 and pointed out that they relied upon certain preparations of sodium and potassium compounds employed as intermediates in connection with the making of calcium or aluminum salts which did not come within the scope of count 2. We stated as follows: *"None of those intermediate products was actually analyzed.* It is urged by Farrington et al. that, *in view of the final product* which was obtained, the intermediate compounds *must* have corresponded to the composition called for by the counts in issue. *However, in the absence of any analysis whatsoever of such intermediate compounds, we are unable to hold that their production warrants a holding of conception or reduction to practice of the compounds defined by the counts in issue."* (Emphasis added.)

In the Farrington et al. case, supra, it was clearly held that in order to award one

party a date of invention prior to the filing date of the other party the former must supply affirmative proof of his acts. The decision there was based upon the facts of the case and we find nothing that would justify the assumption that in all such cases if a complex chemical compound is analyzed for merely one or two of its constituents that such analysis is sufficient to prove the identity of such compound.

Other minor contentions and other cases have been cited by appellant and have been carefully examined but we find no reason for unduly extending this opinion by discussing them. We are of opinion that they are of no avail to appellant.

For the reasons herein set forth the decision of the Board of Interference Examiners is affirmed.

Affirmed.