27 C.C.P.A.(Patents)

## KVALNES v. WRIGHT.
### Patent Appeals No. 5704.

United States Court of Customs and
Patent Appeals.

June 30, 1950.

———◆———

Walter C. Wheeler and Chester H. Biesterfeld, Wilmington, Del., for appellant.

I. Seltzer and C. W. Levinson, New York City (Albert H. Graddis, New York City, of counsel), for appellee.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, JOHNSON, and WORLEY, Judges.

GARRETT, Chief Judge.

This is an appeal from the decision of the Board of Interference Examiners of the United States Patent Office awarding priority of invention to the party Wright. Four counts seem to have been involved before the board, but the appeal to us was taken only as to Count 1, which reads:

1. The disazo dye of the formula:

$$\underset{\text{O}}{\overset{\text{O}}{\text{``}}}\ \overset{\text{H}}{\underset{}{\text{CH}_3\text{C-N}}}\text{-}\langle\,\rangle\text{-N=N-}\underset{\text{OCH}_3}{\overset{\text{OCH}_3}{\langle\,\rangle}}\text{-N=N-}\langle\,\rangle\text{-OH}$$

Wright (who describes himself as a British subject in his application) is the senior party. His application was filed June 25, 1942. The application of Kvalnes, which appears to be assigned to E. I. du Pont de Nemours & Company, was filed June 17, 1943.

The board awarded Wright constructive reduction to practice as of July 22, 1941, on which date a Provisional Specification of a British application was filed in his behalf. This award is not challenged before us.

In his preliminary statement Kvalnes alleged actual reduction to practice of the count before us "during the month of June 1939."

The board held, in effect, that the compound of the count had been produced at the time claimed for reduction to practice, but held that the tests made of the compound were not sufficient to demonstrate its utility. Therefore, it was held that appellant could not be awarded actual reduction to practice but was confined to the constructive reduction to practice incident to his filing date of June 17, 1943.

We quote the following from the board's decision (reference to page numbers of the

record being omitted as indicated by asterisks):

"Diazotization requires observance of definite conditions. Equimolecular quantities of nitrite and amine are used and the mineral acid should be in excess, at least 2 to 2½ equivalents being present. Diazotization is always carried out in the cold. Diazonium salts couple readily and easily to phenols and aromatic amines under the proper procedure. Both reactions are the common procedures in the azo dye laboratory and are so well standardized and understood that, taking into consideration also the observable expected phenomena accompanying the reactions, there is no question in the mind of the chemist as to the final product. This is the situation here and the evidence shows the proper procedure was followed. We believe that in the peculiar circumstances of this case, there is reasonable certainty that the compound of count 1 was produced and that analysis was not necessary to establish identification.

"The tests with the product of count 1 demonstrated outstanding light-fastness as compared with a selected standard, but the product was somewhat deficient in the important property of transfer in the dyeing of nylon hosiery. Consequently the du Pont Sales Division questioned the practicality of the dye for the dyeing of nylon hosiery and the product was never sold on the market by the du Pont company. * * However, Kvalnes considered that this deficiency did not rule out the use of the dye in admixture with other dyes under controlled conditions, and tests were requested in this regard. Tests carried out in the fall of 1941 by Hunter (Ex. 16), using the product made by Holeton, were considered by the witness Hunter as satisfactory, as concerns absorption rate and light-fastness when used in mixes, but it is believed clear these factors alone are not determinative of success. Jig dyeing tests were also made by Ryan, but proved unsatisfactory for hosiery dyeing due to poor leveling properties * * *. According to Kvalnes, a mill trial was requested on the final sample in admixture, but this was not done due to unsettled conditions * * *.

"It seems clear according to the foregoing summary of events that practical utility of the product of count 1 has not been satisfactorily demonstrated. Practicality of the dye in connection with nylon hosiery was questioned by the du Pont Sales Division because of deficiency in transfer. At the time of the tests practically all of the nylon produced was converted into hosiery * * * and so it was with such products that tests for practicality were concerned. The laboratory dye tests for nylon had not reached a standardized condition at that time * * * and the tests with mixtures obviously were not conclusive, as is apparent from the fact that a mill run was requested, but, as noted above, was never carried out.

"With respect to utility, Kvalnes cites the well-known case of Corona Cord Tire Co. v. Dovan Corp., 276 U.S. 358, 48 S.Ct. 380, 72 L.Ed. 610, 1928 C.D. 253, for the proposition that 'A composition of matter is reduced to practice when it is completely composed.' In the present case, however, the problem involved was the suitability of the compound as a dye, and not in merely producing it. In this circumstance, reduction to practice must demonstrate the practical utility as a dye. Knutson et al. v. Gallsworthy, 82 U.S.App.D.C. 304, 164 F.2d 497, 74 U.S.P.Q. 324, 608 O.G. 215. The case of Potter v. Tone, 36 App.D.C. 181, 1911 C.D. 295, is also relied upon for the view that a showing of utility for some purpose, such as excellent light-fastness in the present case, is sufficient. In the cited decision, the count did not specify the purpose or field of usefulness. The situation here is different because the count calls for a dye, and practical utility for this purpose must be shown.

"We conclude the party Kvalnes has failed to demonstrate practical utility, and actual reduction to practice of the invention of count 1 has not been established."

With respect to conception on the part of Kvalnes the board seems to have assumed that he conceived prior to the filing date of Wright's British application, but held the record to be "manifestly lacking" in a showing of reasonable diligence on the part of

Kvalnes during the critical period beginning just prior to Wright's established record date, July 22, 1941, and extending to his (Kvalnes') own filing date, and the holding as to such lack of diligence is not challenged in the appeal to us.

So, the ultimate question to be determined, stated in simple terms, is whether the record establishes utility of the composition which Kvalnes is accredited by the board with having produced prior to the date awarded Wright for reduction to practice.

(We hereinafter give attention to a contention made in the brief for Wright to the effect that the record does not justify the holding that Kvalnes produced the composition and the motion of Kvalnes to strike that portion of the Wright brief.)

We deem it proper to quote from the Kvalnes brief the contentions made on his behalf.

"Firstly Kvalnes' specification sets forth that the object of the invention is to produce insoluble disazo colors (dyes), and Count 1 specifies one of the novel disazo dyes. Therefore it is appellant's position that if Kvalnes establishes utility of the compound defined by Count 1 with respect to any use for dyeing, such should be acceptable as proof of utility of Count 1 because the count specifies a dye and dyeing is the intended use set forth in appellant's specification.

"Secondly Kvalnes contends that his record shows, among other proofs of utility that dyeings were made for him by expert testers working under requests issued by Kvalnes and his superior, Dr. S. S. Rossander of the Jackson Laboratory; and that the making of the dyeings with the dye of Count 1 were made by these testers in order to enable them to make their reports on the excellencies and defects of the dye, and that the making of these dyeings is in itself proof of utility of the dye of Count 1.

"Third, it is here noted that the Board had decided that Kvalnes has proved that he made the compound of Count 1 before July 22, 1941, the British filing date of Wright's Convention application.

"Fourth, it is appellant's position that proof of utility of a compound, such as that defined by Count 1, may not be confined by the Board of Interference Examiners to a use which the Board may arbitrarily select, such as the dyeing of nylon *hosiery*. The count of appellant's specification is not limited to the dyeing of hosiery. This is clearly evident from the record, and Kvalnes should not be denied the decision of priority on the ground that he did not prove utility with respect to some use to which the count is not limited."

The brief then analyzes *in extenso* the testimony and other evidence presented at the trial. We have studied all the evidence —that is, the oral testimony and the documentary and physical exhibits—in the light of the analysis and the arguments with the result that we are not convinced that the finding of the board, the material parts of which are quoted, supra, properly may be held to be against the weight of the evidence.

█ It may be seen from the position taken in the quotation from the Kvalnes brief, supra, that it is argued that the board arbitrarily selected the dyeing of nylon hosiery as the use by which utility of the composition should be determined, and it is insisted that this was error, because, it is argued, if Kvalnes established any use of the composition for dyeing (which it is claimed he did as to some other nylon textile) that should be accepted as proof of utility of the count.

We do not think the dyeing of nylon hosiery was arbitrarily selected by the board as the use for determining utility.

It is observed that what the board said was: "* * * *At the time of the tests practically all of the nylon produced was converted into hosiery* * * *" and so it was with such products that tests for practicality were concerned. (Italics ours.)

In support of this finding the board cited testimony given by Kvalnes himself, which seems to us fully to justify the board's statement.

That all, or practically all, of the nylon then being made was then used in the manufacture of hosiery is not questioned, nor is it claimed that the Kvalnes composition was useful for dyeing it. In fact, it seems to

us to be well established that it was not useful for dyeing such nylon.

Furthermore, we are unable to find any satisfactory showing that it actually had utility in dyeing any textile not used in the manufacture of hosiery.

All the tests made were laboratory tests and the assignee of the Kvalnes application (E. I. du Pont de Nemours & Company) does not appear to have added the composition to its line of colors offered for dyeing nylon.

Since we find no justification for holding that there was error in the board's decision, it is not deemed necessary to add to the length of this opinion by entering upon a more detailed review of the evidence than that already given.

In a parenthetical paragraph, supra, reference is made to a contention presented in the brief on behalf of Wright and a motion of Kvalnes to strike that portion of the Wright brief.

It has been recited, supra, that the board held that the compound, or composition, of Kvalnes was produced prior to the date awarded Wright for constructive reduction to practice and that "analysis was not necessary to establish identification."

Wright having prevailed below did not appeal from the board's holding, but in his brief before us argued, in effect, that the identity of the Kvalnes product "cannot be held to have been clearly established."

On behalf of Kvalnes a motion to strike that portion of the brief relating to that matter was filed, it being insisted that in the absence of an appeal by Wright he has no right to challenge the board's finding.

In an action at chambers the motion to strike, which Wright opposed, was denied with the right reserved to Kvalnes to renew it at the final hearing before us. It was so renewed and a very extensive brief and argument was filed in connection with the motion. Wright renewed his opposition and the subject matter was taken under advisement along with the merits of the case.

■ In view of our decision on the merits, a decision on the motion would have no effect upon the result so far as this case is concerned, and we, therefore, refrain from action upon it on the ground that, under the facts appearing, it is moot.

■ For the reasons which have been indicated in our discussion on the merits, the decision of the Board of Interference Examiners is affirmed.

Affirmed.