**VELSICOL CHEMICAL CORPORATION, Plaintiff-Appellant,**

v.

**MONSANTO COMPANY, Defendant-Appellee.**

No. 77–1032.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 16, 1977.

Decided June 30, 1978.

Rehearing and Rehearing In Banc Denied Sept. 7, 1978.

Sidney Neuman and Donald A. Peterson, Chicago, Ill., for plaintiff-appellant.

C. Frederick Leydig, Chicago, Ill., Arnold H. Cole, St. Louis, Mo., for defendant-appellee.

Before PELL, BAUER and WOOD, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

This is an appeal from a decision of the district court upholding an order of the Board of Patent Interferences of the United States Patent and Trademark Office (the Board) awarding priority of invention to the Monsanto Company. Plaintiff-appellant Velsicol Chemical Corporation contends that the district court erred in failing to permit it to reopen the issue of Monsanto's "right to make" the count in question and in excluding certain evidence offered by Velsicol on the ground that the appellant had failed to produce the evidence in the proceeding before the Board. In addition, the appellant questions the scope of review undertaken by the district court and suggests that the court made a mistake of law concerning the evidentiary standard for determining whether there has been sufficient corroboration of an inventor's reduction to practice of his invention. We affirm.

*Statement of Facts*

Velsicol Chemical Corporation and the Monsanto Company each claim that its assignor (Krenzer and Stoffel, respectively) independently synthesized chemicals belonging to a new class of compounds [1] which were successfully tested as herbicides. The subject of the instant proceeding is not the patent for the new chemicals themselves, which was awarded in a separate proceeding, but rather a patent for a "method" of applying the compounds as herbicides. The filing date of the Monsanto (Stoffel) application containing the herbicide count was December 13, 1965. The effective filing date of the Velsicol (Krenzer) application containing the identical count was three months later—March 18, 1966.[2] The Patent Office instituted an interference proceeding to determine who had priority on the herbicide count, Monsanto (Stoffel) being the senior party by virtue of its earlier filing date.[3]

During the early stages of the interference, Velsicol (Krenzer) filed a motion to dissolve the proceeding on the ground that the patent application which Monsanto (Stoffel) had filed did not describe how to make the compounds used in the herbicidal process of the count, as is required by 35 U.S.C. § 112, and that, therefore, Monsanto did not have the "right to make" the count in the interference. Velsicol's motion was denied by the Primary Examiner. The parties then submitted evidence to the Board relating to the priority issue. On final hearing, the Board did not deal with the priority evidence, but instead reconsidered and granted the earlier motion to dissolve and awarded priority to Velsicol (Krenzer) in a decision dated September 20, 1972. Monsanto appealed the Board's decision to the United States Court of Customs and Patent Appeals (CCPA) pursuant to 35 U.S.C. § 141. In its decision of June 23, 1974, the CCPA accepted Monsanto's argument that one skilled in the art could produce the compounds in question without further disclosure or experimentation and reversed the Board. On remand, the Board considered the priority proofs previously submitted by the parties and in a decision dated October 24, 1974, held that neither party had proved a reduction to practice of the herbicide prior to their respective application dates. Consequently, priority of invention was awarded to the senior party Monsanto (Stoffel), solely on the basis of the application filing dates.

1. The class was described by the Board as a "restricted group of 2,4-substituted-oxadiazolidine-3,5-diones."

2. The count was actually filed on November 17, 1967, but was accorded the benefit of Krenzer's earlier co-pending application.

3. A third party in the interference (Smathers) was dissolved out by the Board on March 25, 1971.

On December 20, 1974, Velsicol filed a civil action in the district court for review of the Board's decision pursuant to 35 U.S.C. § 146. In pretrial discovery, Velsicol learned of certain experimental failures experienced by Stoffel which Velsicol believed contradicted Monsanto's position before the CCPA that one skilled in the art could produce the compounds in question without further disclosure or experimentation, but which Monsanto had failed to reveal to the CCPA. On the basis of this information, Velsicol filed a petition on November 17, 1975, with the Commissioner of Patents and Trademarks seeking to strike Monsanto's application for fraud and inequitable conduct pursuant to Rule 56 of the Patent and Trademark Office. On November 21, 1975, Velsicol moved the district court to either stay the proceedings in the civil action pending the outcome of the petition in the Patent Office or to remand the entire case to the Patent Office. In a decision dated April 14, 1976, the district court denied Velsicol's motions and granted Monsanto's motion for an order precluding Velsicol from relitigating at trial the issue of Monsanto's "right to make" the herbicide count. The district judge also granted Monsanto's motion to preclude Velsicol from calling two new witnesses, on the ground that Velsicol had waived their testimony by not offering their depositions in the proceedings before the Board. On May 10, 1976, Velsicol moved for leave to file an amended complaint challenging Monsanto's "right to make," which motion was subsequently denied. The case was tried on June 30, 1976 and on November 1, 1976 the district court entered judgment for Monsanto affirming the decision of the Board. Velsicol now appeals that judgment pursuant to 28 U.S.C. § 1291.

On May 14, 1976, the Assistant Commissioner of Patents and Trademarks stayed consideration of Velsicol's petition to strike the Monsanto (Stoffel) application in order to allow Velsicol to bring the fraud allegations before the CCPA. This was accomplished on June 18, 1976, by means of a petition to recall the mandate in the prior patent appeal. The CCPA denied the petition in a 3 to 2 decision on March 10, 1977. The Patent and Trademark Office denied the motion to strike Monsanto's application on October 27, 1977.

## The Scope of Review

■ Velsicol contends that the district court did not undertake the proper scope of review, suggesting that the court below erroneously failed to scrutinize the evidence in the Patent Office record. We do not agree. It is well established that the proper standard of review in a Section 146 action is that enunciated by the Supreme Court in *Morgan v. Daniels*, 153 U.S. 120, 124, 14 S.Ct. 772, 773, 38 L.Ed. 657 (1894):

> Upon principle and authority, therefore, it must be laid down as a rule that, where the question decided in the patent office is one between contesting parties as to priority of invention, the decision there made must be accepted as controlling upon that question of fact in any subsequent suit between the same parties, *unless the contrary is established by testimony which in character and amount carries thorough conviction.* (emphasis added).

The "thorough conviction" determination is to be made on the basis of the entire record before the district court, including both the record that was before the Board and any additional evidence admitted by the court. Although a court may end up with a "thorough conviction" that the Board was mistaken even when there is no new evidence beyond the record before the Board, *Cody v. Aktiebolaget Flymo*, 146 U.S.App.D.C. 345, 350–351, 452 F.2d 1274, 1279–80 (1971), *cert. denied*, 405 U.S. 990, 92 S.Ct. 1254, 31 L.Ed.2d 456, this court has recognized that "the less 'new' evidence there is before the district court, the more blatant the Board's factual errors must have been before the district court is justified in reversing the Board's award," *Rex Chainbelt, Inc. v. Borg-Warner Corp.*, 477 F.2d 481, 487 (7th Cir. 1973). With this in mind, we find nothing in the district court's opinion that indicates that the court failed to undertake

the proper scope of review.[4] On the whole, the opinion supports the conclusion that the court below gave full consideration to the evidence before the Board.

### The Barnas and Berliner Testimony

In its April 14, 1976 order the district court granted Monsanto's motion to preclude Velsicol from presenting the testimony of two witnesses—Dr. Barnas and Mr. Berliner—whose testimony had not been produced in the proceeding before the Board. The court concluded that by failing to offer the two witnesses' testimony in the earlier proceeding, Velsicol had waived its right to do so in the § 146 action. Because of the requirements of the independent corroboration rule and the fact that Barnas and Berliner were the only potential eyewitnesses to Krenzer's experiments, the court's ruling was of great importance for Velsicol's case. In order to determine whether the ruling constituted an abuse of discretion, we must examine the proper standard for waiver in these circumstances, as well as the allocation of the burden of proof and the actual facts before the trial court.

A § 146 civil action is a hybrid proceeding combining elements of a *de novo* trial and an appellate review.[5] However, it appears that over the long history of this section and its predecessors the appellate character has increasingly gained in significance. The ancestor of § 146 was the bill in equity, Act of 1870, c. 230 § 52, 16 Stat. 205 (later R.S. § 4915). As the Supreme Court stated in *Butterworth v. United States ex rel. Hoe*, 112 U.S. 50, 61, 5 S.Ct. 25, 30, 28 L.Ed. 656 (1884):

> [A bill in equity proceeding is] a proceeding in a court of the United States having original equity jurisdiction under the patent laws, according to the ordinary course of equity practice and procedure. It is not a technical appeal from the patent office like that authorized in § 4911 [now § 141], confined to the case as made in the record of that office, but it is prepared and heard upon all competent evidence adduced, and upon the whole merits.

It appears that, in general, evidence not previously presented in the Patent Office proceeding was not excluded from consideration for that reason, if otherwise admissible. *Deller's Walker on Patents*, 970, 3197 (1937 ed.). However, as early as 1927 the

---

4. Plaintiff points to the fact that the court's opinion stated that "[t]he Board of Patent Interferences as an arm of the Patent Office has great expertise in determining the amount and type of proof desirable to show reduction to practice prior to filing an application and we defer to the substantive rules followed by the Board in this case." It is clear that this passage concerns the court's adherence to the independent corroboration rule rather than excessive deference to the Board's findings of fact. Plaintiff also points out that the district court stated that it thought its prior decision not to permit plaintiff to introduce the testimony of two corroborating witnesses to be the "controlling issue in the case." Again, we find that this reflects more a judgment of the adequacy of the corroborating evidence in the record before the court than an abdication of the court's duty to independently review the whole of that evidence.

5. *5 Deller's Walker on Patents*, § 459 (2nd ed. 1972), states that

> Although an action under 35 U.S.C. § 146 is conducted as a trial *de novo* rather than an appeal, it is essentially a review of a decision of the Board of Patent Interferences. In other words, it is an extension of Patent Office

proceedings. It is in essence a suit to set aside a judgment of a quasi-administrative body—the Patent Office. . . .

Section 146 provides in pertinent part:

> § 146. Civil action in case of interference.
> Any party to an interference dissatisfied with the decision of the board of patent interferences on the question of priority, may have remedy by civil action, if commenced within such time after such decision, not less than sixty days, as the Commissioner appoints or as provided in section 141 of this title, unless he has appealed to the United States Court of Customs and Patent Appeals, and such appeal is pending or has been decided. In such suits the record in the Patent and Trademark Office shall be admitted on motion of either party upon the terms and conditions as to costs, expenses, and the further cross-examination of the witnesses as the court imposes, without prejudice to the right of the parties to take further testimony. The testimony and exhibits of the record in the Patent and Trademark Office when admitted shall have the same effect as if originally taken and produced in the suit.

Third Circuit in *Barrett Co. v. Koppers Co.*, 22 F.2d 395 (3rd Cir. 1927), held that the right to offer new evidence was not unlimited. In the interference proceeding in that case plaintiff prevented its witnesses from testifying concerning commercial practice with respect to the invention in question. When the plaintiff then attempted to introduce similar commercial practice evidence in the proceeding in the district court, the judge held that they were estopped from doing so. The Third Circuit affirmed on appeal, holding that the plaintiffs were ". . . estopped to offer evidence which was wholly within their possession and control at the interference proceeding and which they withheld from that proceeding . . . and thereby made it impossible for . . . that court to render what they [the plaintiffs] now maintain is the right decision" 22 F.2d at 397. The court added:

> In a contest between two claimants to the same invention on an issue of priority each is expected to produce all the testimony he has on that issue so that the Patent Office tribunals and the courts may make right decisions. If for some reason of his own a party withholds evidence which is available to him and which he can produce at will but does not produce, then he must be regarded as having abandoned that evidence in its bearing on the issue under trial. When that issue is decided it is somewhat in the nature of res judicata as to the evidence withheld.

*Id.* The *Barrett Co. v. Koppers Co.* doctrine was accepted in principle by this circuit in *Globe-Union, Inc. v. Chicago Telephone Supply Co.*, 103 F.2d 722 (7th Cir. 1939), although it was found to be inapplicable on the facts before the court.[6] The court stated:

> [The] principle of estoppel works properly in many instances, e. g. when evidence has been deliberately withheld or secreted, and when a story is completely changed on coming to court. We do not

dispute the soundness of the proposition that all pertinent evidence, actually available, should be admitted in the first instance. To permit partial presentation before the Patent Office is to sanction the destruction of administrative justice.

> But we are satisfied that the estoppel principle has its limitations. It should not be used to penalize an innocent party. Nor should it exclude the presentation of evidence which previously had not been procurable or which had become known after the interference proceedings.

103 F.2d at 728. Over the past half century the *Barrett Co. v. Koppers Co.* principle has been applied to a broadening range of fact situations, prompting one commentator to remark that "[e]rosion of the 'de novo' nature of the Section 146 proceeding continues unabated." Pat.L.Persp. § C.6[1] (1970 Dev.). As the Eighth Circuit noted in *Kirschke v. Lamar*, 426 F.2d 870, 874 (8th Cir. 1970):

> Delineation of that degree of conduct by proponents of additional testimony in the district court which will cause such testimony to be excluded . . . has seen variegated terminology in the case law. . . . Definition of conduct requiring exclusion has run the gamut from "suppression, bad faith, or gross negligence"; to "suppression or the withholding of evidence so readily available and of such importance . . . or oversight of such glaring proportions"; to "concealed or deliberately withheld"; to "bad faith . . ., such as deliberate withholding for some tactical reason"; to "negligent in failing to submit." (Citations omitted.)

From this, the court concluded that "a deliberate, intentional, or willful withholding, or suppression of pertinent and available evidence from the Patent Office, whether attended by reprehensible motives or not, whether it be for tactical or other reasons, justifies exclusion of such evidence in a § 146 proceeding." 426 F.2d at 874.

---

6. The court permitted the introduction of the testimony of an expert handwriting witness in order to discredit diary entries relied on by the defendant. The court stated that it was "not

prepared to say that . . . [the proponent of the evidence] did not exercise due diligence in procuring the evidence sooner than he did." 103 F.2d at 728. See note 11, *infra*.

The language of § 146 itself does not resolve the controversy. In pertinent part, 35 U.S.C. § 146 provides:

In such suits the record in the Patent and Trademark Office shall be admitted on motion of either party upon the terms and conditions as to costs, expenses, and the further cross-examination of the witnesses as the court imposes, *without prejudice to the right of the parties to take further testimony.* The testimony and exhibits of the record in the Patent and Trademark Office when admitted shall have the same effect as if originally taken and produced in the suit. (Emphasis added).

Although the "without prejudice" language of the section arguably manifests a congressional bias in favor of the admission of evidence not presented before the Board, a review of the legislative history and the circumstances surrounding the enactment of that language fails to unearth any clear congressional purpose to that effect.[7] Until 1927, § 4915 merely provided that a party might "have remedy by bill in equity." The phrase "*de novo*" trial has never been used. However, testimony in the record of the Patent Office proceeding was incompetent in the § 4915 proceeding except as permitted by the rules regulating the admission of secondary evidence. *Deller's Walker on Patents*, at 970 (1937 ed.). In 1927 Congress eliminated this inefficient result by making the record before the Patent Office admissible by motion of either party but "without prejudice to the right of the parties to take further testimony." Exactly what Congress might have meant by the quoted language is not entirely clear. However, there is some evidence in the legislative history that the Congressional concern was that admission of the Patent Office record should not impede the parties from replicating parts thereof by the means of the further "live" testimony of the witnesses whose depositions had already been made part of that record. The basis of this concern was a recognition of the relative inferiority of the Patent office procedure for dealing with questions of witness credibility, since testimony could only be presented in deposition form. In contrast, in the district court the live witnesses' demeanor could also be considered.[8] Thus we do not find in the "without prejudice" language a strong congressional intent in favor of the unlimited admission of evidence not previously presented to the Board which would hinder the courts from developing rules limiting the circumstances in which admission will be permitted.

In seeking the proper standard for waiver of the right to present new evidence in a § 146 proceeding, we must be guided by the strong policy considerations underlying the *Barrett Co. v. Koppers Co.* doctrine. We agree with the statement of the court in *Kirschke v. Lamar*, 426 F.2d 870, 874 (8th Cir. 1970), that "[t]he viability of the administrative process presupposes that pertinent and available testimony will be presented before the appropriate administrative body." In our view, this policy is a logical concomitant of the limited standard of review prescribed by *Morgan v. Daniels*, 153 U.S. 120, 14 S.Ct. 772, 38 L.Ed. 657 (1894). If the reviewing court is to give great deference to the decision of the administrative tribunal, it is important that full disclosure to the administrative tribunal by the parties be encouraged so that the

7. See H.R. 1889, 69th Cong., 2d Sess.; S.R. No. 1313, 69th Cong., 2d Sess., p. 4; Hearings, House Committee on Patents, 69th Cong., 2d Sess.; Hearings on S. 4812 Senate Committee on Patents, 69th Cong., 2d Sess.; *Hoover v. Coe*, 325 U.S. 79, 84–88, 65 S.Ct. 955, 89 L.Ed. 1488 (1945).

8. It appears that at the time, the § 4915 procedure was under attack as being duplicative of the procedure for appeal to the CCPA. However, the bill in equity option was strongly defended by some because of the district court's ability to assess the credibility of live witnesses. Hearings, House Committee on Patents, *supra*, p. 11; Hearings, Senate Committee on Patents, *supra*, p. 15. Congress decided to retain both procedures. See also, *Hoover v. Coe*, 325 U.S. 79, 86–87, 65 S.Ct. 955, 89 L.Ed. 1488 (1945).

decision of the former will be an informed one, worthy of that déference.[9]

◼ In light of the foregoing we conclude that absent special circumstances,[10] the proper question for the district court was whether the failure of the proponent of the additional evidence to uncover its existence earlier or to procure it for the interference proceeding occurred in spite of the proponent's diligence in preparing his case before the Board. We agree with the court in *Kirschke* that it makes no difference whether the failure to produce the evidence was "attended by reprehensible motives or not [or] whether it be for tactical or other reasons." 426 F.2d at 874. Moreover, we find that in terms of the policy of encouraging full disclosure it is not necessary that there have been an affirmative action or decision to suppress the evidence; it is enough that a reasonably diligent preparation of the proponent's case before the Board would have led to the discovery of the existence of the evidence and its production. Nor is it necessary that the evidence have been in the exclusive control and possession of the proponent, as long as it was procurable by him. Conversely, a litigant who has been reasonably diligent in identifying and procuring evidence for the interference proceeding will not be precluded from strengthening his presentation in the district court if new evidence should become available to him in the interim.[11]

◼ The question of the allocation of the burden of proof with respect to the waiver issue has seldom been explicitly considered. In the one case in point cited by the parties, *Aqua-Chem, Inc. v. Baldwin-Lima-Hamilton Corp.*, 167 U.S.P.Q. 257, 261 (N.D.Ill. 1970), the district court allocated the burden to the proponent of the evidence. We agree. The policy of encouraging full disclosure supports this allocation. The proponent knows in advance if he plans to introduce evidence not previously presented to the Board. The proponent would be expected to know when he first became aware of the new evidence. If he did know of its existence, yet failed to produce it, he is in the best position to point to any justification for that failure. If he was unaware of its existence, he may also be expected to be in the best position to show that the lack of knowledge was in spite of his due diligence in marshalling evidence for his case before the Board. The opponent may, of course, introduce rebutting evidence showing that the evidence was clearly available at the time of the interference proceeding.

◼ Turning to the instant case, we find that Velsicol failed to meet its burden with respect to the justification of its failure to present the testimony of Barnas and Berliner in the interference proceeding. Velsicol claimed that it was unaware of the evidence

9. Both the court in *Barrett Co. v. Koppers Co.*, 22 F.2d 395, 397 (3rd Cir. 1927), and this court in *Globe-Union, Inc. v. Chicago Telephone Supply Co.*, 103 F.2d 722, 728 (7th Cir. 1939), expressed a concern lest the estoppel doctrine subvert the principles of *Morgan v. Daniels, supra*. This would be a legitimate concern if *Morgan v. Daniels* is read as requiring the plaintiff to meet the "thorough conviction" test exclusively by means of new evidence. However, since more recent cases have applied that test to the evidence as a whole, both new and old, assimilating it to the "clearly erroneous" standard, the problem is not as acute.

10. Examples of special circumstances might include an intervening change in the law, the presence of a new issue, or the admission of other new evidence deserving of a response or further elaboration. See e. g., *Douglas Aircraft Co. v. Mueller*, 107 U.S.App.D.C. 321, 277 F.2d 351 (1960).

11. The dissent suggests that the standard that we adopt here conflicts with *Globe Union, Inc. v. Chicago Telephone Supply Co.*, 103 F.2d 722 (7th Cir. 1939). Although much of the language of that case is concerned with distinguishing the fact situation there present from one involving an intentional suppression of evidence in the interference proceeding, we do not believe that the court intended to preclude the possibility of basing an application of the waiver doctrine on a finding of a lack of due diligence rather than intentional suppression. The court explicitly found that the proponent had exercised due diligence in preparing his case before the Board. See note 6, *supra*. There is also language in the opinion suggesting that the *Barrett Co. v. Koppers Co.* principle would apply to "situations where the evidence was deliberately withheld or *otherwise procurable by the use of due diligence.*" 103 F.2d at 728 (emphasis added).

in question at the time of the interference proceeding in that neither Barnas nor Berliner, both former employees, had been contacted by anyone associated with Velsicol with respect to the subject of the patent proceeding. Monsanto countered by offering evidence showing that Velsicol clearly should have been aware of the possibility of having Barnas or Berliner testify, and that their testimony was in fact easily procurable. The evidence before the district court strongly suggests that Velsicol was grossly negligent in not procuring their testimony. One of the crucial elements that Velsicol had the burden of showing in order to establish a reduction to practice of the herbicide method was the identity of the chemical compound successfully tested on the date in question. Since the results of the chemical analyses undertaken at the time were ambiguous, Velsicol was forced to attempt to prove identity by demonstrating that the compound was prepared by a chemical process which necessarily produced a compound reading on the patent count. In order to do so, Velsicol introduced the testimony and notebooks of the inventor, Krenzer. However, in light of the Patent Office's longstanding independent corroboration rule, Velsicol needed to introduce additional evidence with respect to Krenzer's experiments. The testimony of Barnas and Berliner—the persons who signed Krenzer's notebook as witnesses—represented the most logical source of corroboration.[12] In the circumstances, the lack of any effort on the part of Velsicol to contact Barnas or Berliner demonstrates a lack of due diligence. Monsanto also introduced some direct evidence that Velsicol knew of the existence of these two potential witnesses at the time of trial.[13] The statement of Velsicol's in-house counsel that he felt that the testimony of Krenzer's supervisor would be sufficient corroboration supports an inference that appellant was aware of the possibility of attempting to procure the testimony of Barnas and Berliner but chose the more convenient course. Lastly, Monsanto demonstrated that Barnas and Berliner could have easily been tracked down even though no longer in Velsicol's employ.[14] Under the circumstances, we believe that there was ample support for the trial court's finding that Velsicol had waived its right to introduce the testimony of these two witnesses. Velsicol's stated desire to avoid burdening the Board with cumulative evidence cannot justify its failure to produce evidence which later proved to be far from cumulative. The policy of insuring that the decision of the Board will be an informed one requires that the risk of tactical errors be borne by the proponent, regardless of motive.

### The Richter and Krenzer Testimony

■ Deprived of the testimony of Barnas and Berliner, Velsicol did its best to compensate for the loss by eliciting additional evidence from Krenzer and his supervisor, Richter. Their testimony was primarily directed towards establishing that Barnas and Berliner were competent chemists with opportunities to observe Krenzer's work and that their signatures on the notebook pages were genuine. Monsanto objected that the evidence in question had not been elicited in the proceedings before the Board and the court refused to allow the additional testimony to "strengthen or amplify" the previous testimony of these witnesses.[15] For the reasons outlined above, we find

12. Dr. Barnas was Krenzer's lab partner. Berliner worked in the lab across the hall, but allegedly saw one of the experiments in question.

13. Velsicol's in-house patent counsel admitted that Barnas' name was discussed during the preparation for the interference. (Schwartz's Deposition, p. 14). On the other hand, Schwartz denied any prior awareness of the existence of Berliner.

14. Barnas and Berliner remained at the same addresses as when they were employed by Velsicol. They both live in the Northern District of Illinois. Monsanto had no problem in locating them to take their depositions.

15. Krenzer had previously testified as to Barnas' signature, thereby justifying some amplification on that subject. However, Krenzer was unable to say whether Barnas had actually seen the work in question.

that Velsicol has failed to justify its failure to elicit this testimony in the proceedings before the Board and that the district court's refusal to consider the testimony was not an abuse of discretion. Moreover, the evidence in the record gives rise to a strong inference that Velsicol was grossly negligent in not eliciting the testimony in question from Richter and Krenzer in the interference proceeding. Again, Velsicol's belief at the time that their testimony was not needed does not justify the failure.

### The Richter Reports

■ In the district court trial, Velsicol also offered into evidence certain monthly reports prepared by Richter summarizing the research activity undertaken by his group. These reports were based on reports sent to Richter by the individual members of the group. The district judge sustained Monsanto's hearsay objection, but admitted the reports for the limited purpose of showing that Richter had notice of what Krenzer claimed to have discovered. Velsicol now contends that the reports should have been considered for all purposes as business records pursuant to Rule 803(6) of the Federal Rules of Evidence.[16] We find that the error, if any, was harmless. As the court below noted, no effort was made to introduce the reports as business records.[17] In addition, the reports were not simple hearsay, but hearsay based on hearsay. By considering the reports as evidence of what Krenzer was claiming at the time, the court accorded them their full permissible probative force. Any further consideration of their contents as evidence that the compounds synthesized by Krenzer actually pos-

sessed the structure hypothesized by him would have constituted either implicit expert testimony unsupported by a proper foundation or implicit hearsay statements attributable to Krenzer and entirely duplicative of evidence already in the record. Thus, we cannot say that the actions of the court below constituted an abuse of discretion.[18]

### The Independent Corroboration Requirement and the Rule of Reason

Velsicol next contends that the court below failed to follow a "rule of reason" approach to the independent corroboration requirement, such as that taken by the CCPA in *Grasselli v. Dewing*, 534 F.2d 306 (Cust. & Pat.App.1976), and that under such an approach there was sufficient evidence before the district court to establish a reduction to practice. We do not agree.

■ The purpose of the requirement that the testimony of an inventor concerning a reduction to practice of an invention be corroborated by independent evidence is to prevent fraud. *Berry v. Webb*, 412 F.2d 261, 267, 56 CCPA 1272 (1969). The rule is based on a recognition of the fact "[t]hat a party in an interference proceeding is rarely in a position to present evidence contradicting his opponent's testimony as to his acts of invention." *Hasselstrom v. McKusick*, 324 F.2d 1013, 1018, 51 CCPA 1008 (1963). However, the CCPA has developed a "rule of reason" approach to what constitutes sufficient corroboration:

> The goal of corroboration . . . is simply to establish that the inventor actually produced the product and knew it

---

16. Rule 803(6) Fed.R.Evid. creates a hearsay exception for:

> A . . . report . . . in any form, of acts [or] events . . . made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the . . . report . . . ., all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances or preparation indicate lack of trustworthiness.

17. "Where the offered testimony suggests a question as to . . . its competency, the offer of proof must indicate the facts on which . . . admissibility of the testimony depends." McCormick on Evidence (2d ed.), § 51, p. 111.

18. Rule 103(a), Fed.R.Evid. states that "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected . . .."

would work, by proof that could not have been fabricated or falsified. All the evidence must be considered in determining whether or not the appellant has met such requirement. *Gianladis v. Kass*, 324 F.2d 322, 325, 51 CCPA 753 (1963). "An inventor's testimony . . . might be corroborated by facts and circumstances other than by an independent witness." *Thurston v. Wulff*, 164 F.2d 612, 617, 35 CCPA (patents) 794 (1947). "Obviously, the amount and quality of corroborative evidence that is necessary in any given case will vary with the facts of [each] case." *Hasselstrom v. McKusick, supra*, at 1018. We find that the district court properly concluded that the facts of the instant case require a greater weight of corroborative evidence than that provided by Velsicol.

The critical element in Velsicol's case was the identity of the chemical compounds tested for herbicidal properties. The chemical structure was a new one, discovered by accident in that Krenzer was attempting to synthesize something entirely different. (Tr. 82–84). The chemical analyses were inconclusive, being consistent both with compounds within the patent count and with their mirror isomers, which are not within the count. There was uncertainty at the time of invention concerning the structure of the compound produced. (Tr. 82–84). Under the circumstances, we cannot say that it was unreasonable to require a greater degree of corroboration than that required by the CCPA in *Grasselli v. Dewing*, 534 F.2d 306 (Cust. & Pat.App.1976) and *Patterson v. Hauck*, 341 F.2d 131, 52 CCPA 987 (1965), both of which involved known end products. Velsicol's corroborative evidence consisted primarily of Krenzer's notebook pages, the testimony of Krenzer and Richter, and, to a limited degree, Richter's reports. Richter's testimony and reports were based entirely on information received from Krenzer. The notebook pages provided even less corroboration than those in *Grasselli*, in that here the signing witnesses did not testify and no business record foundation was laid. The two cases cited by Velsicol involving new products, *Young v. Bullitt*, 233 F.2d 347, 43 CCPA

(patents) 932 (1956) and *Berry v. Webb*, 412 F.2d 261, 56 CCPA 1272 (1969), are distinguishable both because of the greater amount of independent corroborative testimony adduced and the lesser degree of uncertainty at the time of invention. In conclusion, we cannot say that the court below misapplied the "rule of reason" standard for corroboration or that its findings with regard to Velsicol's lack of reduction to practice were clearly erroneous.

### The Fraud and "Right to Make" Issues

As was stated earlier, the Board originally decided against Monsanto (Stoffel) on the ground that its application did not adequately disclose the method of preparation of the chemicals in question and that it therefore did not have the "right to make" the count in the interference. The CCPA reversed and remanded to the Board, where priority was awarded to Monsanto. In the discovery proceedings in the court below, Velsicol uncovered certain experimental failures by Stoffel which Monsanto had failed to reveal to either the Board or the CCPA and which Velsicol believed were material to the "right to make" issue. Velsicol sought to present this new evidence to the district court, which declined to receive it. Velsicol contends that the new evidence raised two issues. Firstly, it asserts that the court should have reopened the disclosure of the method of preparation issue on the basis of the new evidence. Secondly, it alleges that Monsanto's failure to disclose the unsuccessful experiments to the Board and the CCPA constituted fraud and inequitable conduct which would preclude the awarding of a patent to Monsanto under the Supreme Court's decision in *Precision Instrument Manufacturing Co. v. Automotive Maintenance Machinery Co.*, 324 U.S. 806, 65 S.Ct. 993, 89 L.Ed. 1381 (1945), and Patent Office Rule 56.

We find that the district court's decision not to consider the fraud issue was clearly proper. Normally, in § 146 proceedings "consideration of issues ancillary to priority is limited to those issues which

have been raised before the Board in the interference proceeding." *Standard Oil Co. v. Montedison, S.p.A.*, 540 F.2d 611, 616 (3rd Cir. 1976). However, in *Standard Oil* the Third Circuit also held that "in appropriate circumstances the district court may . . . in the exercise of a sound discretion, permit an issue of fraud which infected the Board's determination to be raised though it was not raised in the interference proceeding." *Id.* at 617. We need not decide whether a similar discretion exists here where the decision in question had already been considered on appeal by the CCPA and where the alleged fraud was perpetrated more on that body than on the Board. For even assuming the existence of such discretion, we find that on the facts of the present case the district court's failure to entertain the issue cannot be considered an abuse of discretion. In *Standard Oil*, the court noted that "[w]hether the issue has been or may be more conveniently raised in another judicial proceeding has relevance" in deciding whether to exercise the discretionary power to hear the issue. In the case at bar, there were proceedings pending before both the Patent Office and the CCPA with respect to the fraud issue at the time that the district court declined to provide yet another forum for the question.

 The disclosure of the method of preparation issue presents a somewhat more complicated question. The issue was first presented to the district court by defendant's motion *in limine* to preclude Velsicol from relitigating Monsanto's "right to make" on the ground that the issue had already been determined by the CCPA. The court held that the CCPA decision was *res judicata* on this issue. Although we find that the question is not one of *res judicata*, but rather of the related doctrine of law of the case, the latter rule in this instance has a firm statutory basis and is particularly strong where the decision of a coordinate appellate court is in question.[19] 35 U.S.C. § 144 provides that "[u]pon its

determination the court [CCPA] shall return to the Commissioner a certificate of its proceeding and decision, which shall be entered of record in the Patent and Trademark Office and *govern the further proceedings in the case.*" (Emphasis added). The general rule with respect to the judicially created law of the case doctrine is that the law of the case "is not an inexorable command, and must not be utilized to accomplish an obvious injustice." *Cochran v. M & M Transportation Co.*, 110 F.2d 519, 521 (1st Cir. 1940). See also *United States v. Habig*, 474 F.2d 57, 60 (7th Cir. 1973), *cert. denied*, 411 U.S. 972, 93 S.Ct. 2145, 36 L.Ed.2d 695 and cases cited therein. We need not consider whether the congressional concern for finality expressed in § 144 deprives a subsequent court of the power to reopen the decision of the CCPA, for we find that in the circumstances of this case, the decision of the court below not to do so cannot be considered an abuse of discretion. Here, the new evidence which Velsicol desired to bring into the district court had already been offered to the Patent Office, and subsequently to the CCPA. It is true, as Velsicol has pointed out, that the fraud issue and the "right to make" issue are not identical. However, Velsicol itself has repeatedly maintained that "the fraud issue . . . was inextricably intertwined with the 'right to make' and 'new matter' issues, and, in turn, the issue of priority." (Appellant's Brief, p. 45). It was thus likely that the CCPA would consider the relationship of the new evidence to the "right to make" issue in the process of deciding the fraud issue. It was also appropriate that it be the court to do so, since it was the court whose determination of the "right to make" issue represented the law of the case in the proceeding. It was for analogous reasons that the Patent Office stayed consideration of Velsicol's Rule 56 petition and asked Velsicol to take the issue to the CCPA. Indeed, a review of the majority's opinion in the CCPA's decision rejecting Velsicol's fraud claims indicates that the majority found the

---

**19.** "A judge should hesitate to undo his own work. . . . Still more should he hesitate to undo the work of another judge. . . ." *Peterson v. Hopson*, 306 Mass. 597, 603, 29 N.E.2d 140, 145 (1940), quoted in 18 Moore's Fed.Practice, p. 453.

evidence not to have been sufficiently probative of the "right to make" issue to conclude that Monsanto's failure to disclose it was inequitable.

Velsicol relies heavily on this court's decision in *Tibbetts Industries, Inc. v. Knowles Electronics, Inc.*, 386 F.2d 209 (7th Cir. 1967). In that case we held that a plaintiff who had failed to exercise his right to remove an appeal of a Board of Patent Interferences decision from the CCPA to a district court under 35 U.S.C. § 141 was not precluded from pursuing a subsequent § 146 action in order to attack a later decision of the Board in the same case. The important difference in the present case is that the issue which Velsicol sought to reopen was one stemming from the Board's decision already appealed to the CCPA, and not from a later decision which had not yet been the subject of an appellate review. Here, Velsicol had the right under § 141 to require that the review of the Board's "right to make" decision be conducted in a district court rather than the CCPA. If it had done so, discovery would have been available and the evidence in question probably would have been uncovered. Veliscol chose not to exercise that right and we cannot say that the district court abused its discretion in relegating Velsicol to its petitions before the Patent Office and the CCPA in its efforts to collaterally attack the prior decision of the CCPA.

The decision of the district court is

AFFIRMED.

PELL, Circuit Judge, dissenting.

In my opinion, the exclusion at the district court level of the proffered testimony of Barnas and Berliner, without more, is sufficient to require a reversal and remand for a new trial and I therefore respectfully dissent. In holding that the evidence was properly excluded, it appears to me the majority opinion rests its decision on matters not reached or considered by the district court, goes beyond the plain language meaning of a trial "without prejudice to the right[s] of the parties to take further testimony" as provided by 35 U.S.C. § 146, and,

in finding that case law has put a judicial gloss other than the plain meaning on the phrase, has created a new and stultifying standard for the litigant who desires to appeal a decision of the board of patent interferences. The majority opinion without real support in the record characterizes the appellant's failure to bring two witnesses before the board as gross negligence when at most it was a reasonable mistake in judgment as to the point at which cumulative evidence becomes wasteful of everyone's time. Indeed, the district court in the present litigation expressed the opinion in denying the introduction of the testimony of Barnas and Berliner that their testimony would be "cumulative at most."

Apparently Monsanto did not believe that this court would hold that the failure to produce all witnesses who had knowledge of the proceedings would in and of itself be the basis for its subsequent exclusion in a district court trial, for it argues in its brief that "it is clear that plaintiff made a conscious, deliberate decision not to call Barnas and Berliner as witnesses in the administrative proceeding, and plaintiff is now bound by that decision." Monsanto then proceeds with an analysis of the facts pertaining to the two witnesses in an effort to support the assertion that there was a deliberate, conscious decision not to call them. This, however, was not the basis of the district court's decision, nor does the majority opinion of this court, in my reading thereof, rely on a deliberate, conscious withholding decision.

The district court's ruling in rejecting the proposed evidence was as follows:

The first of defendant's motions seeks to preclude plaintiff's use of two witnesses who were not called by it in the interference proceeding referred to above. *Krenzer v. Stouffel et al.*, Patent Interference No. 96,419 (Oct. 24, 1974). These witnesses, Dr. Barnas and Mr. Berliner, are former employees of the plaintiff. Although both left plaintiff's employment prior to filing the interference, they were known to the plaintiff and its attorney and were available to it as witnesses.

The Board of Patent Interferences at p. 8 of its decision referred to plaintiff's failure to call these two witnesses and was therefore required to decide the case with "unwitnessed self-serving statements of the inventor". Furthermore, plaintiff's house counsel, Robert Schwartz, testified at p. 14 of his deposition in this case that *he believed plaintiff's best witness would be Dr. Richter, that he was the person in charge of the laboratory and knew everything which was going on, and that the case could be proven up by him. Therefore, any testimony by Barnas or Berliner would apparently be cumulative at most.* Under 35 U.S.C. § 146, the record of the Patent and Trademark Office is the record in this case, subject to further cross-examination or the right to introduce further testimony, so long as this right has not been waived. In our opinion, the right has been waived in the case at bar with respect to the witnesses Barnas and Berliner, although plaintiff may make a written offer of proof if it desires. F.R. A.P. 43(c). We find and conclude that defendant's objection to their testimony should be sustained in the trial of this case. *See Globe-Union Inc. v. Chicago Telephone Supply Co.,* 103 F.2d 722, 728 (7th Cir. 1939); *Aqua-Chem Inc. v. Baldwin-Lima-Hamilton Corp.,* 167 U.S.P.Q. 257 (N.D.Ill.1970). [Emphasis added.]

Indeed, it appears as stated above, that the district court was actuated substantially by the belief that the testimony was of no great consequence: "Therefore, any testimony of Barnas or Berliner would apparently be cumulative at most." Yet, this conclusion follows by only a few lines the court's recognition that the board of patent interferences had, in effect, by specific reference to the failure to call the two witnesses, indicated that as a decisional matter the board thought their testimony was important. Under the board's approach the excluded testimony filled the alleged void in Krenzer's proof which had been noted by the board when it indicated that that proof had been lacking only in the one respect of the Berliner and Barnas testimony. It is clear from the Monsanto brief that the missing testimony had become important:

Also, plaintiff had no difficulty locating other less important witnesses who were no longer employed by plaintiff at the time the testimony was taken. Nor did the Board have any difficulty in discerning the significance of the two witnesses who were never contacted.

The majority opinion also recognizes the importance of the evidence by referring to it as having been "proved to be far from cumulative." Ironically, the district court, which did not admit the evidence, thought it was merely cumulative and, at least in part, justified the exclusion on that basis. The determination of how much to offer at the administrative level now, under the majority opinion, appears to be dependent to a considerable extent upon the hindsight ability possessed by counsel.

The district court did cite in its order the law of this circuit applicable to the present issue as found in *Globe-Union, Inc. v. Chicago Telephone Supply Co.,* 103 F.2d 722, 728 (7th Cir. 1939). It is clear from a reading of that case that this court in following the leading case of *Barrett Co. v. Koppers Co.,* 22 F.2d 395 (3d Cir. 1927), was not prepared to abandon all aspects of trial de novo in these proceedings when in the district court, and that this court regarded *Barrett* as clearly involving conduct approaching intentional or deliberate withholding:

Counsel goes further and insists that the court in the Barrett case did not restrict the principle announced to situations where the evidence was deliberately withheld or otherwise procurable by the use of due diligence. We disagree with counsel. Every opinion must be read with reference to the facts upon which it is based. The Barrett case stands on facts clearly showing intentional withholding of evidence. In fact, even if counsel were correct, we would not go that far. To hold with counsel's contention is tantamount to judicial abrogation of R.S. § 4915, 35 U.S.C.A. § 63. Such a contention would make it impossible for a plaintiff to meet the test laid down by the doctrine of *Morgan v. Daniels,* i. e.,

that the interference-judgment can be overcome "by testimony which in character and amount carries thorough conviction." [153 U.S. 120, 14 S.Ct. 772, 38 L.Ed. 657.]

*Id.* at 728. That this court properly interpreted *Barrett* is indicated in a later case in the Third Circuit under R.S. Section 4915 (now 35 U.S.C. § 146) in which that court, pointing out that the statute provides that the trial in the district court shall be without prejudice to the right to take further testimony, emphasized that in *Barrett* the plaintiffs had specifically instructed witnesses not to answer certain questions. *Minnesota Mining & Mfg. Co. v. Carborundum Co.*, 155 F.2d 746, 748 (3d Cir. 1946). It is also to be noted that the Third Circuit, substantially tracking the approach of this court in *Globe-Union*, observed that "[t]o adopt the view contended for here by the defendants would be to change the nature of an R.S. Section 4915 proceeding and to rewrite the statute." *Id.*

The defendant in the present case attempts to distinguish *Globe-Union* and *Minnesota Mining* on the basis that the evidence offered in those cases was that of expert witnesses. This appears to me to be a distinction without a difference; in both cases the contention was unsuccessfully made that the witnesses were available and not offered in the administrative proceedings and therefore under *Barrett* should not have been heard. Yet that is the standard, i. e., awareness of availability and failure to offer, which the majority opinion, in essence, is adopting.

It is also to be noted in *Globe-Union* that this court did not specify a stringent standard on procurability or availability:

> It seems undisputable that evidence may be available and existent at a given time, and yet not be within the knowledge or "possession and control" of the person desiring to make use of it.

103 F.2d at 728.

It is true that the court in *Globe-Union* refers to evidence otherwise procurable by the use of due diligence. Nevertheless the parallels between the facts upon which the holding in *Globe-Union* was based and those in the present case are striking. In the former case the diaries which were attacked in the district court by the expert witness were the subject of a discrediting attempt before the board. The opposing party pointed out in *Globe-Union* that this additional evidence was available in the Patent Office and under *Barrett's* standard he should "produce all the testimony he has on that issue," and the evidence should have been excluded. The holding of this court in *Globe-Union* was that the offerer of the evidence "did not intentionally withhold the evidence which he later produced in court," and the court was not prepared to say that he did not exercise due diligence in procuring the evidence sooner. *Id.* at 728. In the case before us, Velsicol had produced the diaries before the board and they were subject to attack there. Unfortunately Velsicol did not bring in two former employees who had witnessed the work because of what appears to be a reasonable mistake of judgment that the diaries were otherwise sufficiently corroborated by the evidence introduced at the board level. This is far from an intentional withholding and unless this court is now prepared to hold to a per se rule that any evidence available at the time of the board proceedings must be introduced, which *Globe-Union* does not require, the district court judgment should be reversed. While the present majority opinion draws the inference that Velsicol's failure to introduce the evidence supports an inference that it was guilty of gross negligence, this is a matter that was not determined at the trial level where the determination should have been made, and I do not conceive that the record at the appellate level supports the inference. As this court observed in *Globe-Union*, "[T]he estoppel principle has its limitations. It should not be used to penalize an innocent party." *Id.* at 728.

As I read the majority opinion, it appears to me that the underlying rationale on the present issue, although not perhaps explicitly so stated, is that while originally *Barrett* was concerned with a deliberate and con-

scious withholding, later cases have broadened the factual situations in which evidence would not be admitted in the subsequent "without prejudice" district court trial. In this connection, principal reliance upon case law is placed upon *Kirschke v. Lamar*, 426 F.2d 870 (8th Cir. 1970). Because of the truncated nature of the quotation from this Eighth Circuit case as it appears in the majority opinion, I deem it necessary to set forth the full quotation as to the gamut of conduct requiring exclusion:

> Definition of conduct requiring exclusion has run the gamut from "suppression, bad faith, or gross negligence," *Shell Development Co. v. Pure Oil Co.*, 111 F.Supp. 197, 199 (D.D.C.1953); accord, *Polaroid Corp. v. Horner*, 197 F.Supp. 950, 954 (D.D.C.1961); *Minnesota Mining & Manufacturing Co. v. General Electric Co.*, 167 F.Supp. 37, 40 (D.D.C.1958); to "fraud, bad faith, or gross negligence," *Monsanto Co. v. Kamp*, 269 F.Supp. 818, 822 (D.D.C.1967); to "the suppression or the withholding of evidence so readily available and of such importance * * or oversight of such glaring proportions," *Boucher Inventions, Ltd. v. Sola Electric Co.*, 76 U.S.App.D.C. 160, 162, 131 F.2d 225, 227 (1942), cert. denied, 318 U.S. 770, 63 S.Ct. 762, 87 L.Ed. 1140 (1943); accord, *Schilling v. Schwitzer-Cummins Co.*, 79 U.S.App.D.C. 20, 22–23, 142 F.2d 82, 84–85 (1944); to "concealed or deliberately withheld," *Jorgensen v. Ericson*, 81 F.Supp. 614, 618 (E.D.Mo.1949), aff'd, 180 F.2d 180 (8th Cir. 1950); to "bad faith * * * such as deliberate withholding for some tactical reason," *Knutson v. Gallsworthy*, 82 U.S.App.D.C. 304, 164 F.2d 497, 509 (1947); to "negligent in failing to submit," *California Research Corp. v. Ladd*, supra. Compare *Barrett Co. v. Koppers Co.*, 22 F.2d 395, 397 (3d Cir. 1927), and *Eastman Kodak Co. v. E. I. DuPont de Nemours & Co.*, 284 F.Supp. 389, 395 (E.D.Tenn.1968), with *Nichols v. Minnesota Mining & Manufacturing Co.*, 109 F.2d 162, 166–167 (4th Cir. 1940), and *Globe-Union Inc. v. Chicago Telephone Supply Co.*, 103 F.2d 722, 728 (7th Cir.

1939), and with *Perkins v. Lawrence Sperry Aircraft Co.*, 57 F.2d 719 (E.D.N.Y.1932). *Id.* at 874.

With the exception of one reference therein to "negligent in failing to submit," all of the gamut of characterizations connote some considerable egregiousness at the administrative proceedings level: fraud, bad faith, gross negligence, suppression, deliberate withholding, readily available and of such importance, oversight of glaring proportions, and concealed. Turning to the one reference to "negligent," which might at first blush appear to indicate that simple negligence would be sufficient, the citation is to *California Research Corporation v. Ladd*, 123 U.S.App.D.C. 60, 67–68, 356 F.2d 813, 820–21 n. 18 (1966). In that case, there was a reversal to permit the introduction of additional evidence, although the standard of negligence was not decisionally involved. The reference to negligence is in a marginal note which cites on a "see" basis, *Killian v. Watson*, 121 U.S.P.Q. 507 (D.D.C.1958). In *Killian*, a district court decision, the court declined to admit the evidence on its conclusion of law that "the plaintiff . . . was *grossly negligent* in failing seasonably to submit, during the proceedings in the Patent Office, evidence to overcome the Drown patent . . . ." *Id.* at 509 (emphasis added). Thus, despite the reference to "negligent" in *Kirschke*, it appears there is no firm authority for a less egregious negligence standard than that of gross negligence.

Nevertheless, while the majority opinion does not explicitly recognize a simple negligence test, and while the opinion refers to an inference of gross negligence, the ultimate standard set by the majority opinion is that unless the evidence is "new," whatever that means, or unless the offerer's diligence has brought in all known evidence no matter how cumulative and repetitious the result may be he is now prejudiced, despite the wording of the statute, in taking further testimony in the district court. One cannot quarrel with estoppel or waiver, as the situation is variously called, being applicable to the deliberate and intentional

withholding of evidence for tactical purposes, or, indeed, for no purpose at all. The quest for truth in litigation, however, is not aided by the rigidity of the rule now enunciated in the majority opinion.

While the defendant in the present case, as I have previously indicated, has argued on this appeal that Velsicol made a conscious, deliberate decision not to call the two witnesses, I do not read the record as supportive of this assertion. Certainly the district court, which rested basically on the concept that the evidence was cumulative, did not so find.[1]

While I do not happily extend the length of this dissent, I feel it is necessary to look at the pertinent testimony in the Schwartz deposition:

Q. Did you argue the case before the CCPA?

A. Yes, sir.

Q. Did you ever discuss with anyone the question of whether Messrs. Berliner or Barnas should be used as a witness in the interference?

A. The only time it came up, in one instance Mr. Parker did show me one notebook entry with Mr. Barnas' signature as the witness, and he asked me if he was still with the company, and I explained he had been let go. That was all I know of it until I heard the deposition.

Q. How about Berliner, was there any discussion of his testifying at all?

A. His name never came up.

Q. Yet you were aware, were you not, that Mr. Berliner's signature appeared on certain pages of Dr. Krenzer's notebook?

A. My memory is the first time I recall them being on the books was during the taking of the depositions. Mr. Parker did not show them to me, and I don't recall seeing them before. I may have, but I don't remember.

Q. Did you ever discuss the possible weakness in the Velsicol case vis-a-vis the proofs, and ultimately found by the Board of Interferences, because of an inability to prove up the things that you were trying to prove?

A. It was my belief on that issue that the best witness would be Dr. Richter. As Dr. Barnas told you today, he was always in that lab. Dr. Krenzer reported to him, and he knew everything going on. I felt that the case would be proven up by Dr. Richter.

The majority opinion, nevertheless, on the basis of the cold record disagrees with counsel and makes its own independent determination at the appellate level that Barnas and Berliner were the most logical sources of corroboration. Even with hindsight with which counsel are not blessed, but which judges have the opportunity of exercising, I have difficulty in determining how Dr. Richter could be so easily brushed under the carpet.

The majority opinion in addressing the question of whether there "was ample support for the trial court's finding that Velsicol had waived its right to introduce the testimony of the two witnesses," adverts to the above statement of Velsicol's in-house counsel as supporting an inference that Velsicol was aware of the possibility of attempting to procure the testimony of Barnas and Berliner. This inference, respectfully, is weak as to Barnas and non-existent as to Berliner. Nothing in the Schwartz testimony indicates more than that he thought that Dr. Richter, the supervisor of Krenzer, the inventor, who had contact with Krenzer, was the best possible corroborator of the inventive work. This is a far cry from either a conscious and deliberate withholding or a gross negligence situation. In *Kirschke*, on the other hand, the appel-

---

1. The district court in its order of April 14, 1976, the pertinent portion of which is quoted above, ruled that the witnesses would not be permitted to testify. In its final judgment entered November 1, 1976, the court found no reason to change its April ruling, but also with reference to the offer to prove observed that the offer did not show that Barnas witnessed many of the experiments recorded on various pages of the notebooks. It appears to me to fly in the face of reason that laboratory workers who have signed pages of notebooks indicating observation of experiments can be expected many years after the event to have independent recollection of each specific experiment.

lant did not call as witnesses the engineers who had carried out the actual work in reducing the invention to practice. I find nothing more here than that there may have been simple negligence in not engaging in an overkill of evidence by bringing in the two ex-employees. Velsicol did not conceal the fact at the board level that the work of Krenzer had been witnessed from time to time by Barnas and Berliner. That fact was no secret to those involved including Monsanto. It would seem that if Velsicol was fearful that the testimony of the two would have been detrimental to its cause, Monsanto, who would have been perfectly free to approach the potential witnesses who were no longer employees of Velsicol, could have itself utilized the testimony to defeat the Velsicol priority contention. There is no indication in the record that Velsicol's failure to call the witnesses stemmed from any motivation other than a good faith belief that the testimony was unnecessary because Dr. Richter, who was always in the laboratory, was the best source of corroboration.

It appears to me from a review of the authorities dealing with the present issue that judicial curtailment of the statutorily stated right under 35 U.S.C. § 146 of a trial "without prejudice to the right[s] of the parties to take further testimony" may well have followed from a blurring of the distinction between a trial with additional evidence and one which is completely de novo. As the majority opinion points out, correctly in my opinion, the section 146 civil action is a hybrid proceeding combining elements of a de novo trial and an appellate review.[2] A full scale trial de novo as that term is ordinarily used means a new trial or retrial had in an appellate court in which the *whole case* is gone into as if no trial whatever had been had in the court below. Black's Law Dictionary, Rev. 4th Ed. at

1677 (1968). [Emphasis added.] With this definition in mind I refer to marginal note 5 in the majority opinion quoting from Deller's Walker on Patents to the effect that an action under section 146 is conducted as a trial de novo rather than an appeal. This would not seem to be entirely correct as a trial de novo has a broader meaning than that of a lack of prejudice to the submission of additional evidence. The next statement in Deller appears to me to be the key to the present situation in that the district court trial is essentially a review of the board decision and an extension of the Patent Office proceedings.

The meaning of the author becomes clear by reference to his supporting citation, omitted in the majority opinion footnote, *Radio Corporation of America v. Philco Corporation*, 201 F.Supp. 135, 143 (E.D.Pa., 1961). That case spells out that while under the statute the district court trial has aspects of trial de novo, the statutory mandate is not broad enough to include the raising of totally new issues. While I agree that the de novo aspects should not permit the submission of new issues, this should not cause a blurring without good cause of that phase of a trial de novo which the statute does permit, the submission of additional evidence. In sum, I think good cause has not been shown here.

I should add that I also find the rigidity demonstrated with regard to records kept in the ordinary course of the business of the laboratory somewhat distressing in the light of modern day rules of evidence and the avowed intention of the rules of procedure to facilitate a quest for the truth.

Finally, while I have not based my dissent on the denial by the majority of the applicability of the "rule of reason," that rejection all the more would seem to indi-

---

2. Nevertheless, decision have referred to the district court trial as one de novo. Thus in *Kislyn Corporation v. Eastman Kodak Co.*, 42 F.Supp. 552, 553 (D.N.J., 1942), the defendant's effort to introduce additional evidence was resisted by its opponent upon the basis of *Barrett*. The district court there disposed of the contention promptly and firmly:

The argument does violence, not only to the statutory provisions, but to the decision upon which the plaintiff relies. This is a trial de novo . . . .

The district court cited in support of its position, *inter alia*, *Globe-Union*, *supra*.

cate that the plaintiff should have been given the opportunity to demonstrate by witnesses the correctness or incorrectness of its assertion of priority of invention. Very candidly, it appears to me that the district court unnecessarily abandoned its duty to permit a fair trial in overabundant deference to procedural rules (termed by the district court as substantive rules) of the board. Compare *Radio Corporation of America, supra.*

I do not intend to indicate that Velsicol would prevail upon a new trial. I merely indicate that I think they should have had the opportunity to have presented in the district court the excluded evidence in the interest of fairness and justice.